51 CCPA

## Application of David GOTTLIEB and Alfred Ammann.
### Patent Appeal No. 7103.

United States Court of Customs and Patent Appeals.
March 19, 1964.

George T. Johannesen, Kalamazoo, Mich. (Eugene O. Retter, Kalamazoo, Mich., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Gottlieb and Ammann appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 7, 10, 12 and 14 through 17 of appellants' application [1] for a "Chemical Compound." No claims have been allowed. The rejection was predicated on "lack of utility."

There is no issue here relating to the form or the substance of the appealed claims, thus obviating the necessity for their reproduction.

The claimed invention is for a new antibiotic called filipin, derived from a soil sample taken in the Philippine Islands, containing *Streptomyces filipinensis*. The antibiotic is allegedly "characterized by anti-fungal activity."

Claims 7 and 10 relate to the antibiotic compound and describe it in terms of its physical properties. Claims 12 and 14 through 17 recite the process used to produce filipin.

The specification states:

"Because of its low phyto toxicity, filipin is useful in the treatment of gray leaf spot in tomato plants caused by *Stemphylium solani*. The antibiotic is useful also in the treatment of other plant and fruit diseases caused by fungi which includes black mold in onion plants, corn leaf blight, collar rot in tomatoes, bitter rot in apples, tomato wilt, and the like. Further, its use in the treatment of skin and deep-seated infections is likewise indicated. Still further, because of its marked inhibition of tritrichomonas foetus, in concentrations as low as one microgram per milliliter, its use in the treatment of abortion in cattle is likewise indicated."

It is apparent from this quotation that three separate areas of use are suggested: (1) as a plant fungicide; (2) for treatment of human "skin and deep-seated infections," and (3) for "treatment of abortion in cattle."

In the use of the antibiotic for treatment of the skin and deep-seated infections, it is stated that filipin may be combined with other antibiotics, antifungal agents, steroids, or other antibacterial or medicinal agents. The specification recites the results of tests showing the inhibitory effect of filipin against certain fungi as well as composition tests of the inhibitory effects of filipin and ethanol against certain fungi. It is noted that the tests were performed *in vitro*.

During the prosecution before the Patent Office, appellants referred to an article by M. L. Gattani [2] showing tests of filipin against root-rotting fungi *in vitro*. These studies are said to prove the effectiveness of filipin as a plant fungicide. The examiner's only comment was "The tests on damping-off disease for safflower in Gattani's article * * * are obviously not convincing of all utilities alleged in the specification."

In addition, an affidavit of Tucker was submitted concerning the use of filipin in the treatment of human infection in an effort to prove the utility of filipin in humans.

All grounds of rejection advanced by the examiner were reversed except the

---

1. Serial No. 471,811 filed November 29, 1954.

2. "Studies on the Control of Damping-off of Safflower with Antibiotics" in Plant Disease Reporter, Vol. 4, No. 3.

rejection for lack of utility. In affirming this rejection, the board stated:

"The appealed claims stand rejected for lack of utility in the absence of clear and convincing proof that the compositions are safe, effective and reliable for the purpose alleged. Appellants' specification states that the use of their antibiotics 'in the treatment of skin and deep-seated infections is indicated.' The specification states that it can be used in topical or oral preparations. Under the circumstances of this case we consider that the therapeutic utility has not been proven. We agree with the Examiner that the evidence submitted is insufficient. For the reasons that the Examiner has set forth the affidavit is not convincing to us of all the therapeutic utilities alleged in the specification. The Examiner points out that the affidavit is hearsay as it is not by the individuals doing the work. Further, the statistical results do not appear significant. The rejection of the appealed claims for lack of utility will be sustained."

On reconsideration, the board said:

"Appellants urge that there is adequate disclosure of nonhuman utility at the bottom of page 13 of the specification. The Examiner, in his Answer, stated in regard to the rejection of the claims for lack of utility that appellants have failed to prove that filipin *per se* is an effective therapeutic in animals. We affirmed this rejection. No showing was made as to proof of nonhuman therapeutic utility. Furthermore, the specification merely 'indicates' that filipin may be useful for the purpose now relied on by appellants."

The evidence and the arguments concerning the alleged utilities "in the treatment of abortion in cattle" and in the treatment of human "skin and deep-seated infections" need not be analyzed in detail under the view we take of the case inasmuch as we consider the first branch of the case concerning utility as a plant fungicide to be dispositive.

It is appellants' contention that the disclosed utility for the control of fungal diseases of plants is sufficient for statutory utility and that no issue was raised below about this disclosure. They reason, therefore, that the real issue is the propriety of certain statements in the specification and not the patentability of the claims, and that the cancellation or correction of the additional statements of utility is a matter for petition to the Commissioner rather than appeal to this court.

The solicitor maintains "that neither the examiner nor the Board conceded that filipin has been shown to be useful for any of the purposes alleged in the specification." He argues that the board's finding of lack of "proof of non-human therapeutic utility" refers to the allegation of utility as a plant pesticide as well as to the "indicated" utility in the treatment of abortion in cattle. The *in vitro* tests conducted by appellant and by Gattani were not sufficient, according to the solicitor, to prove that the product is useful, because there is "no assurance that an antibiotic is not toxic when used *in vivo*." Moreover, the Gattani studies do not provide adequate proof of effectiveness as a plant fungicide, because only specific fungi are discussed in the instant specification and Gattani did not treat these fungi, and the safflower involved in the Gattani tests finds no support in the specification.

■ We are of the opinion that the disclosure of utility in treating a variety of fungi is sufficient to satisfy the statutory requirements of 35 U.S.C. § 101. It does not appear from the abbreviated record before us that the utility as a plant fungicide was questioned below. The examiner apparently accepted the statements concerning plant fungi, but found them not sufficient to prove "all utilities alleged in the specification." The board affirmed without any detailed analysis or comment on the plant utility disclosure in the specification. Certainly no justification was given below for challenging

the alleged utility as a plant fungicide. The board's opinion, quoted supra, indicates a consideration only of the *human* aspects of the alleged utility, and appears to ignore the primary allegation of utility as a plant fungicide. Even on reconsideration, the board failed to mention the use as a plant fungicide. It seems unlikely that the words "non-human therapeutic utility" in the board's opinion are a reference to the utility as a plant fungicide, particularly in view of the next sentence, which refers to the fact that the specification merely "indicates" utility "for the purpose now relied on." The specification states that utility in humans and animals is "indicated," but the allegation of utility against a variety of plant fungi is set forth without equivocation.

The solicitor relies heavily on the case of In re Novak et al., 306 F.2d 924, 49 CCPA 1283. In that case the only utility alleged was in human beings. The Patent Office required proof of the alleged utility which appellants failed to provide. In the absence of proof of *any* utility, this court said:

"In our opinion, when an applicant bases utility for a claimed invention on allegations of the sort made by appellants here, unless one with ordinary skill in the art would accept those allegations as obviously valid and correct, it is proper for the examiner to ask for evidence which substantiates them. Here we find no indication that one skilled in this art would accept without question statements that carboxymethyl dextran has the alleged effects on the functioning of *any* base, physiologically active or not, and no evidence has been presented to demonstrate that the claimed products do have those effects."

In the instant case, even if the proof of utility in human beings or animals is not adequate, there remains the alleged utility as a plant fungicide.

The allegation of utility as a plant fungicide would not normally appear "to be incredible in the light of the knowl-edge of the art, or factually misleading". In re Citron, 325 F.2d 248, 51 CCPA ——. Nevertheless, appellants have submitted evidence tending to prove the utility of filipin as a plant fungicide in the Gattani studies. The report of Gattani states:

"It is evident that the application of filipin solution for 3 days effectively reduced damping-off of safflower.

&ast; &ast; &ast; &ast; &ast; &ast;

"Filipin, an antifungal agent, has been reported to be inhibitive against a wide variety of fungi and to give partial protection to tomato plants against *Stemphylium solani*. Our *in vitro* investigations show that filipin is inhibitive against *Helminthosporium sativum, Fusarium culmorum, Rhizoctonia solani, Phoma betae,* and *Pythium* sp. pathogenic to safflower."

■ We consider this evidence sufficient to prove that filipin is useful. The fact that the fungus causing damping-off of safflower is not specifically disclosed in appellants' specification does not detract from the efficacy of the article as proof that filipin is useful as a plant fungicide. Damping-off of safflower presumably falls within "other plant and fruit diseases caused by fungi" encompassed by the disclosure. We emphasize the fact that the issue here is whether the record shows the claimed antibiotic to be *useful* under 35 U.S.C. § 101 and *not* whether superior or unexpected results were obtained bearing on an issue of patentability under section 103 of the statute. Having found that the antibiotic is useful for *some* purpose, it becomes unnecessary to decide whether it is in fact useful for the other purposes "indicated" in the specification as possibly useful.

Appellants' argument seems to acknowledge that there may be a question as to the propriety of statements in their application concerning uses other than the control of fungal diseases. Our present holding is not to be construed as precluding the Patent Office from making such requirements as to correction or

cancellation of those statements as may be appropriate.

For the foregoing reasons, the decision of the board is reversed.

Reversed.

SMITH, J., concurs in the result.