55 CCPA

**Application of Paul D. HARWOOD.**

**Patent Appeal No. 7830.**

United States Court of Customs
and Patent Appeals.

March 7, 1968.

Harvey W. Edelblute, New York City, (George R. Jones, Beale and Jones, Washington, D. C., George P. Maskas, New York City, of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 24–37 in appellant's application[1] for "Insect Population Control."

The invention relates to compositions and methods for control of insect populations. In contrast to more ordinary methods of insect control employing stomach or contact poisons, appellant causes sexual sterility in insects by treating them with insect baits containing certain nitrofuran derivatives. The specification states:

The present invention is based upon the surprising discovery that the nitrofurans, which possess antibacterial, antifungal and antiprotozoal activity against a wide spectrum of microorganisms, * * * [are] effective in inducing sterility in the male and female of a variety of insect species without, however, killing them or reducing their sexual activities. This discovery followed the observation that adult flour beetles, *Tribolium confusum* Order Coleoptera), were able to live in a mixture of corn meal and alfalfa meal even though the mixture contained as much as 11% by weight of nitrofurazone, but failed to reproduce.

In his specification appellant explains his theory of the manner in which the nitrofuran derivatives cause sterility in insects:

The microbiology of insects is a highly technical and complex subject. It has been demonstrated that several species of insects require symbionts for reproduction. These specialized microorganisms obtain food and shelter from the insect and return to the insect certain metabolic products such as vitamins of the B-complex, hormones and other chemical metabolites that are necessary for sexual reproduction. These symbionts include protozoa, bacteria, yeast and bacteria-like organisms. * * *

The intimate relationship between fertility among insects and infection with symbionts has been illustrated by studies upon certain scale insects. * * * Male cockroaches when deprived of symbionts were found to be sterile although mated with normal females. *Presumably all insects harbor symbionts.*

Although symbionts may be destroyed in insects in a variety of ways, both physical and chemical, none of these are of practical value because they cannot be applied to insect control. *Although it has not been definitely established that the nitrofurans when used according to the present invention are effective in sterilizing insects because of their action on the symbionts, this appears to be the case* [since] the amounts of the nitrofurans that are

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 171,824, filed February 8, 1962.

effective are much lower than would be expected to be effective in sterilization of the insects by action on their gonads. Also, the nitrofurans are known to be highly effective against a wide variety of microorganisms at very low dilutions. * * * [Emphasis supplied]

After setting forth a detailed example illustrating the effectiveness of a particular nitrofuran derivative, nitrofurazone, in controlling the propagation of a representative insect, the common vinegar fly, the specification states:

The present invention is applicable to the control of a large number of different insects which include most of the orders of the class Hexapoda. Among the more important of these from an economical point of view are the Orthoptera (grasshoppers, cockroaches, etc.); Homoptera (aphids, cicadas etc.); Hemiptera (the true bugs); Coleoptera (Beetles); Lepidoptera (moths and butterflies); Diptera (the two-winged flies); and the Hymenoptera (Bees, ants and others).

In addition to nitrofurazone, a number of other nitrofuran derivatives are disclosed to be useful in carrying out the method:

* * * it has been found, for instance, that 2-nitrofuran and 5-nitro-2-furfural have substantially the same sterilizing effects. Others, such as 5-nitro-2-furaldehyde 2-methylsemicarbazone, N-(5-nitro-2-furfurylidene)-1-amino-2-pyrrolidone, and 5-nitro-2-furfural hydrazone, are more effective than nitrofurazone in these tests in controlling the insect population. * * *

* * * * * *

* * * various other 2-substituted-5-nitrofurans are effective in sterilizing insects in accordance with the present invention. The effective compounds of the present invention are characterized by having the nucleus:

The group R may represent hydrogen or other substituent radicals such as alkyl, hydroxyalkyl, acyloxyalkyl, oximidoalkyl, semicarbazonoalkyl, hydrazonoalkyl, diacyloxyalkyl, carboxyalkenyl, carbalkoxyalkenyl, acyl, carbalkoxy, halogenocarbalkoxy, carbamyl, dialkylcarbamyl and still others. Many of these are described in United States Patents 2,436,214, 2,610,181, 2,742,462, 2,802,002 and others.

Among the specific 5-nitro-furfurylidenes that are available and may be used in practicing the present invention are included:

5-Nitro-2-furaldehyde semicarbazone, N-(5-Nitro-2-furfurylidene)-3-amino-2-oxazolidone, N-(5-Nitro-2-furfurylidene) - 3-amino-5 - (N′-morpholinylmethyl) -2- oxazolidone, 5-Nitro-2-furaldehyde acetyhydrazone, 5-Nitro-2-furaldehyde-2-(2-hydroxyethyl) semicarbazone, N-5 (5 - Nitro - 2 - furfurylidene) - 1-amino-2-pyrrolidone, N-(5-Nitro-2-furfurylidene) -1-amino-2-imidazolidone, N-(5-Nitro-2-furfurylidene)-1-amino-2-imidazolidinethione, and N-(5-Nitro-2-furfurylidene)-1- amino hydantoin. Still others and some not mentioned in the above U.S. patents may also be used in the same manner and in the same amounts indicated hereinabove.

Claim 32 is representative:

32. A method of causing sexual sterility in insects which comprises administering to the insect a 2-nitrofuran.

With that background information concerning appellant's invention in mind, we turn to the issues presented to us by the decision of the board and appellant's reasons of appeal. As those issues are quite diverse in nature, we shall discuss each separately.

*Operativeness Rejection*

Faced with the recitations in appellant's specification as above set forth, the examiner rejected all claims "for lack of proof of utility." Although the examiner appears to have accepted appellant's assertions and evidence that nitrofurazone and certain other 2- or 5-nitrofurans sterilized flour beetles and vinegar flies,[2] both of which insect species apparently require the presence of symbionts for reproduction, he questioned the operativeness of appellant's compositions and process to sterilize all species of insects, observing that the claims recite "insects" without qualification. As evidence of the asserted inoperativeness, he cited two literature articles,[3] each of which is said to disclose that some insects initially require symbionts for reproduction while others do not, and that still different species of insects which have been rendered symbiont-free may or may not lose their reproductive capacity. In view of those references, the examiner found that:

> \* \* \* those of ordinary skill would not readily accept allegations that all insects which have been rendered symbiont-free would be sexually sterile. Therefore, the rejection for lack of proof of utility is deemed proper in the absence of a showing that insects not dependent upon symbionts for their reproductive capabilities would be rendered sexually sterile by ingesting nitrofurans. No such showing has been offered.

The board agreed, adding that the cited articles demonstrate that "elimination of symbionts from many" of the large number of insects mentioned in appellant's specification "would not effectively sterilize them." It concluded that appellant had not sustained his burden of proving operativeness, citing In re Novak, 306 F.2d 924, 49 CCPA 1283, where we stated:

> \* \* \* when an applicant bases utility for a claimed invention on allegations of the sort made by appellants here, unless one with ordinary skill in the art would accept those allegations as obviously valid and correct, it is proper for the examiner to ask for evidence which substantiates them.

■ It is true, as appellant suggests, that there is language of the examiner, if not the board, which indicates that the Patent Office would require appellant *prove* that the nitrofurans contemplated by him would sterilize *all* insects before claims of the present scope would be found allowable. Presumably the only way in which appellant could satisfy that requirement would be to submit experimental data demonstrating that the contemplated nitrofuran compositions would be operative to sterilize *each* and *every* insect species of the tens of thousands of known insect species. This court has previously commented on the practical impossibility of providing such evidence.[4]

While to the above extent the position of the Patent Office appears to be in error, we do not think that there is reversible error in the remaining substance of its position. Appellant has stated by way of observation or affidavit evidence corroborating the specific examples of

---

2. The examiner allowed six process claims directed to a method of sterilizing the vinegar fly with specific compounds.

3. Koch, "Experimental Parasitology," Vol. 5, pp. 481–518 (1956). Richards, "Annual Review of Entomology," Vol. 3, pp. 37–56 (1957).

4. In In re Sarett, 327 F.2d 1005, 51 CCPA 1180, the court stated:
 It is certainly not incumbent on an applicant who has made a broad process invention and supported it by an adequately broad disclosure to demonstrate the operativeness of *every* substance falling within the scope of the broad claims to which he is entitled. In the instant case the research to do this would quite evidently be endless. [Emphasis supplied].
 See also In re Surrey, 370 F.2d 349, 54 CCPA 855; In re Grimme, 274 F.2d 949, 47 CCPA 785.

his specification that a number of particular nitrofuran derivatives are operative to sterilize two rather diverse insect species which require symbionts for reproduction, and has suggested their general applicability to sterilize other insects which also appear to require symbionts in order to reproduce. The Patent Office has accepted appellant's observations and evidence insofar as the two insect species are concerned, and has submitted *no* evidence which would detract from appellant's assertion that the contemplated nitrofurans are generally applicable to sterilize other insects which *do* depend upon the presence of symbionts for reproduction.[5] The examiner, however, has submitted evidence strongly suggesting that appellant's process would not be operative on a number of insects within the scope of the broad claims—namely, those insects apparently not possessing symbionts at all or those which nevertheless survive and reproduce after symbionts are removed.

An inoperative invention, of course, does not satisfy the requirement of 35 U.S.C. § 101 that an invention be useful. We think it was incumbent upon appellant either to limit his claims to the area where operativeness has not been challenged by appropriate and convincing evidence,[6] or to submit representative evidence refuting the apparent

suggestion of inoperativeness of the invention as broadly claimed arising from the references cited by the examiner.[7] Appellant has done neither. As we stated in In re Pottier, 376 F.2d 328, 54 CCPA 1293:

\* \* \* whatever the nature of the subject matter, it has not hitherto been supposed that reasonable requests for evidence were inappropriate where operativeness was not apparent.

All claims have been treated together by the Patent Office and appellant for purposes of the above rejection. We so treat them here. The rejection is affirmed.

### The Section 112 Rejection

Appellant also alleges error in the rejection of claims 24, 25, 27 and 32 under 35 U.S.C. § 112. The examiner found, and the board agreed, that the expressions "a 5-nitrofuran," "a 5-nitrofurfurylidene," and "a 2-nitrofuran" appearing in those claims were "too broad" and lack "supporting antecedent disclosure in the specification" because the terms encompass "all possible derivatives of the recited compounds."

We think those expressions are broader than the invention described in appellant's specification. It seems to us

---

5. See, in that respect, In re Gazave, 379 F.2d 973, 54 CCPA 1524.

6. At oral argument, the solicitor pointed out that limitation of the claims to treating insects which require symbionts for reproduction might well obviate the rejection.

7. We recognize that the validity of the Patent Office rejection is somewhat dependent in a very real sense upon the validity of appellant's *theory* of how his invention works. As noted by the board: \* \* \* If appellant's theory \* \* \* is correct, this procedure [of the invention] would at most be operative on insects which depend upon symbionts for reproduction. \* \* \* In other words, if appellant's theory is in fact erroneous, has the Patent Office

actually given adequate reason for believing the invention partly inoperative as broadly claimed? At the present time, however, there is nothing of record to indicate that appellant's theory is inaccurate, or that the examiner was not justified in accepting it. While there is some suggestion in the proceedings below that appellant had become somewhat disenchanted with the validity of his theory, there is nothing here to suggest that he now abjures it. We think the burden of going forward with the evidence lay with appellant in this particular situation. Evidence that the contemplated nitrofurans *do* sterilize a representative number of insects which do not require symbionts for reproduction would at once disprove appellant's hypothesis as well as overcome the rejection.

that one skilled in the art would learn from the specification that only *certain* nitrofuran derivatives substituted in the 2 and 5 positions of the nucleus are effective for appellant's purposes, not that *any* nitrofuran, including those substituted in the 3 and 4 positions, would be so suitable. See In re Lund, 376 F.2d 982, 54 CCPA 1361, and cases cited therein. The rejection of claims 24, 25, 27 and 32 under § 112 is affirmed.

### The Section 102 Rejection

 Finally, appellant posits error in the rejection of composition claims 24–26 as anticipated under 35 U.S.C. § 102 by patents to Stillman[8] and Manzelli.[9] Contrary to appellant's arguments, the description in both those references of adding various 5-nitrofurans to food materials such as sugar or seed appears to us to result in a material satisfying the claim limitations "an insect bait containing edible material attractive to insects." In our view, however, appellant's position before the examiner and board, and unanswered by them, that Stillman does not describe the quantities of nitrofuran recited in those claims is correct. While Manzelli does describe applying to food material sufficient 5-nitrofuran-containing solution to provide 0.5–1.0% by weight of those nitrofurans, thus satisfying the particle size and quantity limitations appearing in some of the claims, the Patent Office has not pointed out, nor can we find, where that patent does disclose the particular nitrofuran of claim 26. It follows that claims 24 and 25 were, and claim 26 was not, properly rejected under 35 U.S.C. § 102 in view of the references.

The decision is affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.

8. U. S. Patent 2,416,234, issued February 18, 1947.

9. U.S. Patent 2,924,554, issued February 9, 1960.