**Application of Walter E. BUTING.**
**Patent Appeal No. 8210.**

United States Court of Customs
and Patent Appeals.
Dec. 4, 1969.

Everet F. Smith, Indianapolis, Ind., attorney of record, for appellant. Leroy Whitaker, Indianapolis, Ind., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall, Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, MATTHEWS, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 6, 7 and 8 of appellant's application.[1] No claims have been allowed.

The invention before us relates to a method of treating a malignant condition, i. e. cancer, in humans by the administration of one of a group of compounds known as bis($\beta$-aziridino-ethyl) sulfones. It is stated that significant activity of the compounds has been demonstrated against a broad spectrum of experimental neoplasms including certain leukemias, sarcomas, adenocarcinomas, and lymphosarcomas, when the drugs are given by a variety of routes including intraperitoneal, subcutaneous and oral administration.

Confirmation of the activity by clinical treatment of human subjects is alleged. As proof of the asserted utility, appellant presented, in the specification and by affidavidt, evidence of efficacy against a spectrum of leukemia and ascitic and solid tumors in experimental mice of two of the claimed sulfones as well as results of the treatment of two human patients, one with Hodgkin's disease and the other with chronic myelogenous leukemia, with a composition comprising bis[$\beta$ - (2 - methylaziridino) ethyl] sulfone in 95 percent aqueous ethanol. In the patient suffering from Hodgkin's disease, reduction in the nodes in the inguinal and axillary regions of more than 75 percent and a marked decrease in pulmonary infiltrates were observed during treatment. The patient suffering from chronic myelogenous leukemia experienced a remission of the

---

1. Serial No. 346,401, filed February 21, 1964, for "Composition and Methods for Treating Malignant Diseases."

lesions during treatment with the composition.

Claim 6 is representative:

6. The method of treating a malignant condition selected from the group consisting of leukemias, sarcomas, adenocarcinomas, lymphosarcomas, melanomas, myelomas, and ascitic tumors which comprises the administration to a patient suffering from said disease of a therapeutically effective amount of a compound of the formula wherein $R^1$ and $R^2$ are selected from the group

$$R^1, R^2 \backslash N-CH_2-CH_2-SO_2-CH_2-CH_2-N / R^1, R^2$$

[A460]

consisting of hydrogen, methyl, and ethyl.

Claims 7 and 8 are drawn to methods employing species embraced within the genus of claim 6.

The sole question involved in the appeal is whether the demonstrated evidence of efficacy, summarized above, is sufficient under 35 U.S.C. § 101, to support an allegation of utility in humans.

The examiner thought not, finding it unapparent that one skilled in the art would accept the clinical data as statistically significant evidence that all the compounds are safe and effective in humans against all the malignant diseases specified in the claims, citing In re Krimmel, 292 F.2d 948, 48 CCPA 1116; In re Novak, 306 F.2d 924, 49 CCPA 1283; In re Citron, 325 F.2d 248, 51 CCPA 852.

In affirming, the board stated that insofar as the claims were directed to a method of treating humans for conditions heretofore regarded as incurable or, at best, subject to remission, clear and convincing evidence of utility for the claimed purpose would be required. The board then concluded:

We are not aware of any reputable authority which would accept appellant's two clinical cases as establishing utility for treatment of cancer in humans. As was pointed out in Brenner v. Manson, 148 USPQ 689, [383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69] a process to be patentable must produce a useful result and be of substantial utility not merely of scientific interest or for further testing. In this case further testing seems necessary.

Appellant attacks the board's decision by arguing that existing law does not require large numbers of clinical cases for proof of utility. The cases relied on by the Patent Office are alleged to be either irrelevant to the present fact situation or to fail to support the position expounded by the examiner and board. Acknowledging that, in appropriate circumstances, proof of utility may be required by the Patent Office, appellant contends, nevertheless, that the Patent Office has erred in the nature and quantum of the proof called for, in that no case law supports the proposition that *extensive* clinical data are necessary to support an allegation of utility directed to human therapy. The test, it is urged, is as stated in the concurring opinion in In re Hartop, 311 F.2d 249, 50 CCPA 780, "whether 'the invention has been brought to such perfection as to be capable of practical employment'."

The record, appellant argues, contains detailed evidence of the efficacy of the drug from which those skilled in the art would conclude that utility in humans has been demonstrated. The board ignored, it is alleged, the evidence with respect to animals and failed to appreciate the remarkable success obtained with the two human patients, one of whom had been unsuccessfully treated with two established anticancer agents. The qualifications of appellant's expert who concluded that the drug used was a safe, effective and useful agent in the area of cancer chemotherapy were not challenged. That the drug may not be ready for marketing for human therapy, appellant points out, does not detract from its patentability.

■ We agree with appellant that the prior decisions relied on by the Patent Office are of little assistance in the situation before us. In In re Irons, 340 F.2d 974, 52 CCPA 938, this court said that the proofs of utility should be convincing to one skilled in the art; however, it is evident that the *amount* of evidence required depends on the facts of each individual case. In re Gazave, 379 F.2d 973, 54 CCPA 1524. The character and amount of evidence needed may vary, depending on whether the alleged operation described appears to accord with or to contravene established scientific principles and beliefs. In re Chilowsky, 229 F.2d 457, 43 CCPA 775.

Nor do we find Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69, apposite. There the question was whether the *alleged utility* was sufficient to satisfy the requirement of 35 U.S.C. § 101, and not whether any such alleged utility had been *proved*. The issue before us concerns degree of proof, not the statutory sufficiency of the utility asserted.

The solicitor contends that the test to be applied is the acceptability to those skilled in the art both of the asserted utility and of the evidence submitted to

prove the assertion, if evidence is necessary. He requests that this court judicially notice medical publications, appended to his brief, alleged to show that those skilled in the art conclude that it is not possible to extrapolate data obtained in one particular species with a particular tumor to another species. Thus, having removed the animal test data as supporting proof for the utility alleged, there are left only two case histories of one compound to prove utility for seven separate classes of tumors for the entire class of compounds defined in the claims on appeal. Such evidence, it is argued, is insufficient.

■ We need not consider the materials presented by the solicitor, for this court observed in *Krimmel*, supra, 292 F.2d at 953:

We wish to point out that this court is aware of the common practice of using "experimental animals" in considerable variety for the evaluation of chemical compounds for possible pharmaceutical applications prior to clinical testing on humans. It is also our understanding that a demonstration that a compound has desirable or beneficial properties in the prevention, alleviation, or cure of some disease or manifestation of a disease in experimental animals does not necessarily mean that the compound will have the same properties when used with humans.

While the court's consideration of tests demonstrating effectiveness of compounds in treating diseases in animals indicates that such are not to be disregarded, it is clear that such tests must be viewed with respect to the utility asserted.[2] Here, appellant acknowledges that "the application on appeal is specifically directed toward the treatment of human subjects" and the utility asserted is essentially that expressed in the opening phrase of claim 6, reproduced previously. Appellant has shown by clinical case histories only that bis

2. See In re Krimmel, supra, In re Bergel, 292 F.2d 955, 48 CCPA 1102, and In re Hitchings, 342 F.2d 80, 52 CCPA 1141.

[β-(2-methylaziridino)ethyl] sufone is useful in treating Hodgkin's disease and chronic myelogenous leukemia. While the Patent Office tribunals appear to have accepted this observation and evidence, they challenge its adequacy as establishing utility for the stated purposes of treatment of the other kinds of cancer in humans recited in the claims.

We do not find such evidence, limited to one compound and two types of cancer, to be commensurate with the broad scope of utility asserted and claimed, viz. that of treating seven types of cancer with several compounds. Rather, we think it incumbent upon an appellant either to limit his claims to the area where utility has not been properly challenged or to submit evidence refuting that challenge. In re Harwood, 390 F.2d 985, 55 CCPA 922.

Since appellant has done neither, the decision of the board is, accordingly, affirmed.

Affirmed.