Application of **Riyad R. IRANI** and
**Robert S. Mitchell.**

**Patent Appeal No. 8986.**

United States Court of Customs
and Patent Appeals.

Dec. 6, 1973.

Herbert B. Roberts, St. Louis, Mo., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Henry W. Tarring, II, Falls Church, Va., of counsel.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claim 30 of application serial No. 824,378, filed May 7, 1969, entitled "Anhydrides of Organo-phosphonic Acids." [1] We reverse.

Claim 30 reads:

An anhydride of amino tri (methylene phosphonic acid) having the formula $N(CH_2)_3P_3O_6$.

Appellants' specification discloses that amino tri (methylene-phosphonic acid) is reacted with acetic anhydride to produce the anhydride of claim 30.

The rejection of the claim is based solely on two related grounds: (1) "an inadequate disclosure of utility" under 35 U.S.C. § 112; (2) lack of utility under 35 U.S.C. § 101.

The specification as filed contains the following statements about use (paragraph designations added):

[A] In general, the anhydrides of organo-amino-phosphonic acids of the present invention have utility in practically all fields wherein their amine and/or phosphonic anhydride properties can be utilized as well as fields employing an aqueous medium wherein they, by reversion to their corresponding organo-amino-phosphonic acids, have the same utility as such phosphonic acids.

[B] In particular, the compounds of the present invention can find utility in such fields as sequestering or chelating agents, water-treating agents, stabilizers for peroxy compounds, soap anti-oxidants, additives in liquid soap, detergents and shampoos, agents for use in scouring wool cloth and cotton kier boiling, metal cleaning compositions, rubber and plastic compositions and polymeriza-

---

1. The record contains references to a "parent" of the instant application, serial No. 538,198, filed March 29, 1966. The solicitor's brief acknowledges the present application to be a continuation-in-part of said parent, which was abandoned.

tion processes, bottle washing compositions, dairy cleaning compositions, agents for use in pulp and paper processing, corrosion inhibitors, feed and vegetation supplements, herbicides, insecticides, metal treating compositions, electroplating, detergent builders for organic surfactant actives, lime soap dispersants, surfactants, film formers in hair sprays and soluble packages, dispersants for clays, drilling muds, paper pulps, inorganic and organic pigments, and cement slurries, bactericide potentiators, hair modifiers in shampoos, fertilizers, food and beverage acidulants, leavening agents, cheese emulsifiers, modifying agents in evaporated and condensed milk, flame retardants in paints, oil additives, gasoline additives, dentifrice compositions and the like.

These statements, when filed, did not apply only to the claim 30 compound. In context, they applied to all of the compounds disclosed by a generic formula and 27 specific examples of the preparation of various compounds.

Example 1, which is the specific disclosure of the compound of claim 30, concludes by stating:

> [The] anhydride of amino tri (methylenephosphonic acid), $N(CH_2)_3P_3O_6$, [is] a white crystalline product melting in the range of 350–400°C(d) as compared to a melting point of 210–212°C(d) for crystalline amino tri (methylenephosphonic acid).[2]

We note that the "melting" range for the anhydride is much higher than that of the corresponding acid, a point relied on by appellants.

The brief of the Patent Office Solicitor accurately restates the questions on appeal as (a) whether the specification provides a "sufficient teaching of how to use the claimed compound" and (b) whether the claimed compound has "the utility required by 35 U.S.C. 101." As to ground (a) the Patent Office argues that the specification contains no explicit disclosure of a specific use for the anhydride, that the statement that the compounds of the invention "can find utility" in the listed "fields" of use would not enable one skilled in the art to use it, that the statements above quoted are merely suggestions of possible uses, that considerable experimentation would be necessary to discover in which suggested field the anhydride would actually be useful, and that the statute, § 112 (first paragraph), "requires disclosure of how to use the invention in full, clear, concise and exact terms." As to (b), the Patent Office argues that "no adequately specific utility for the claimed anhydride has been asserted, shown, or demonstrated." Therefore, it says, 35 U.S.C. § 101 has not been complied with.

Appellants argue that their admittedly novel and unobvious[3] anhydride had utility at the time their parent application was filed, so that § 101 is complied with, and that the specification enables one skilled in the art to use the anhydride for at least one disclosed practical use, one such use being sufficient under the law. See In re Gottlieb, 328 F.2d 1016, 51 CCPA 1114 (1964). They say, "Any person skilled in the art can read the specification and practice the invention without experimentation."

## OPINION

We shall first consider the question of compliance with § 112.

■ The solicitor has not stated the statutory requirement correctly. It does not require disclosure of how to use the claimed invention "in full, clear, concise and exact terms," as he states in his brief. What § 112 says of the required

---

2. There is no indication in the record or briefs of the meaning of "(d)" and it is of no importance to the issues but it may indicate that the substance decomposes at the temperature stated instead of melting.

3. This "admission" is inferred from the failure of the Patent Office to assert any reason to deny a patent under 35 U.S.C., sections 102 or 103.

description (emphasis ours) is that it shall be

> * * * in *such* full, clear, concise, and exact terms *as to enable* any person skilled in the art to which it [the invention] pertains, or with which it is most nearly connected, *to* make and *use* the [invention].[4]

The question before us is whether such a description has been provided and to answer it we must take into consideration what those skilled in the art (chemists) already knew, or are presumed to have known, from the disclosures available to them before the filing date of appellants' application.

■ For the following reasons, we are of the opinion that appellants' specification meets the requirements of § 112. It teaches that the anhydride of claim 30, among others, when slurried in water is converted into the corresponding acid. That acid had known utility for at least two practical purposes prior to the date of appellants' parent application as shown in two patents issued to Irani, Nos. 3,234,124 and 3,234,140, both issued Feb. 8, 1966. The '124 patent discloses in detail the use of the acid as a sequestering agent to inhibit the precipitation of metal ions from aqueous solutions in commercial uses such as cotton dyeing and bleaching, metal cleaning, pulp and paper manufacture, and others. The '140 patent discloses the use of the acid as a stabilizer for aqueous peroxy solutions used for bleaching cotton, linen, jute, rayon, paper, and the like. Given this much information, which was in the published literature, coupled with the statement in paragraph [A] which we have quoted from appellants' specification, that the anhydride will revert to the acid in aqueous solution, and with the statement in paragraph [B] that it "can find utility in such fields" as, inter alia, sequestering agents and stabilizers for peroxy compounds, we cannot conceive that any competent chemist familiar with such operations would have the slightest difficulty in using the anhydride.

The two Irani patents to which we have referred were placed in the record by appellants in connection with a request for reconsideration of the board's first opinion. They are therefore properly before us. The board considered the request but appears to have given no weight to the disclosure of these patents, apparently because of its adoption of the examiner's theory that there could not be utility in the statutory sense where an acid is converted to an anhydride and the anhydride is converted back to the acid for use. We disagree with this position. The acid having an established practical utility, it follows that the anhydride, which is taught by the specification to be a source of the acid, also has utility. Appellants have also pointed out that their claimed anhydride has a much higher melting point than the acid and is, therefore, more stable. These points answer the Patent Office contention that the anhydride does not meet the utility requirement of § 101.

As we find both utility sufficient to meet § 101 and disclosure adequate to enable anyone of ordinary skill in the art to use the claimed invention as required by § 112, the decision of the board on these two points was in error and is reversed.

Reversed.

---

4. The requirement has been the same since the Patent Act of 1870, § 26, 16 Stat. 198. See also the Revised Statutes, 1874, § 4888.