**Application of Henry MALACHOWSKI.**

**Patent Appeal No. 75–610.**

United States Court of Customs
and Patent Appeals.

April 1, 1976.

Markey, C. J., filed a separate concurring opinion.

Morris Fidelman, Fidelman, Wolffe & Leitner, Washington, D. C., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 1, 2, and 4–8 of appellant's application[1] entitled "Composition and Method for Treating Arthritis." Claims 3 and 9 have been indicated to be allowable. We reverse.

*The Invention*

Appellant's invention relates to the treatment of arthritis, including osteoarthritis, osteoarthrosis, and polyarthritis of unknown etiology. The composition claims are directed to a preparation consisting of the ignition residue of anthracite coal, to be administered orally. The method claims on appeal are directed to the administration of the preparation for treating arthritis without limitation as to what kind of animal is being treated.

1. Serial No. 104,502, filed January 6, 1971.

Appellant discloses the use of his invention for canines "because osteoarthritis and osteoarthrosis is very common among elderly canines." Appellant also alludes to the treatment of equines in that "[h]orses, particularly race horses, commonly suffer with arthritic ailments of a non-infectious etiology consistent with medication by the anthracite coal residue." Lastly, appellant, having realized that arthritis in its many forms (including rheumatoid arthritis) is also prevalent in humans, "contemplated" administering the claimed composition to humans at a dosage rate of 100–1000 mg. per 100 lbs. of body weight.

The claims on appeal are as follows:

1. An anti-arthritic preparation essentially consisting of the ignition residue of anthracite coal in finely divided form, encapsulated in effective dosage unit capsules not exceeding about 5,000 mg/capsule.

2. An anti-arthritic preparation essentially consisting of the ignition residue of anthracite coal compressed into an effective dosage unit bolus form not exceeding about 5,000 mg/dosage unit.

4. The anti-arthritic preparation of claim 1 which analyzes as follows: 42–48% $SiO_2$, 5–8% $Fe_2O$, 0.75–1.0% $MgO$, 1.0–1.5% $K_2O$, 0.05–0.10% $ZnO$, 30–35% $Al_2O_3$, 0.75–1.25% $CaO$, 1.0–1.25% $Na_2O$, 0.2–0.4% $CuO$, 0.03–0.1% $Li_2O$, 0.2–0.4% $P_2O_5$, 2.0–3.5 total Carbon, and 3.0–4.0 $H_2O$.

5. The anti-arthritic preparation of claim 1 wherein the ignition residue is from the anthracite sub-group of anthracite coals.

6. A method for treating arthritis which comprises administering orally a finely divided ignition residue of anthracite coal in daily effective dosage units not exceeding about 100 mg/kg of the body weight of the recipient.

7. The method of claim 6 which comprises administering the residue in capsule form.

8. The method of claim 6 which comprises administering the residue in bolus form.

### The Rejection

The board affirmed the examiner's rejection of claims 1, 2, and 4–8 "for lack of demonstrated utility under 35 USC 101." Having agreed with the examiner that the allegation of utility in the treatment of arthritis is not per se believable without proof, the board concluded that "the burden was and is upon appellant to present proof to support the alleged utility." Thus, the board believed that the issue was the adequacy of the proof submitted on behalf of appellant to overcome the 35 U.S.C. § 101 rejection.

We note that during the prosecution of the present application before the Patent and Trademark Office, several affidavits were filed by appellant. Two declarations were executed by Dr. J. O. Reed. It was established, by one of these declarations, that the claimed invention exhibited a complete absence of toxicity while producing "good" or "excellent" results in roughly 70% of all animals treated. No tests were performed on humans.

The board concluded that the animal tests, insofar as establishing utility in lower animals was concerned, were adequate to rebut the lack of utility asserted by the examiner.[2]

With regard to the claims which are not restricted to animal utility, the board quoted, with approval, from the examiner's answer:

Proof of utility must be commensurate in scope with the allegations of utility

---

2. Two claims which were found to be limited to animal use were considered allowable by the board. These claims read as follows:

3. An anti-arthritic preparation essentially consisting of the ignition residue of anthracite coal in finely divided form in intimate admixture with a prepared animal food

at a daily effective dosage rate not exceeding about 100 mg/kg of the body weight of the animal consuming the food.

9. The method of claim 6 which comprises administering the residue in intimate admixture with a prepared animal food.

set forth in the disclosure. Since human use is alleged for the claimed composition, utility commensurate in scope with the disclosed utility is in order. The Examiner is mindful of the fact that utility supporting human use can be adduced with animal tests, but so far as the record of this application is concerned, the tests do not corroborate . . . human usefulness.

## OPINION

The solicitor, in his brief, stated the issue in this case to be as follows:

Where there is a reasonable basis for questioning the asserted therapeutic utility of a composition, disclosed and claimed by composition and method claims so broadly as to be applicable to humans and lower animals and shown to have the utility in lower animals, are the claims patentable under Section 101 in the absence of acceptable evidence of the asserted utility in humans?

There is no dispute that the claimed invention has not been shown to be useful in humans. Appellant has stated in his brief that "[p]redictive, but not promising, statements are made relative to human utility. Human utility is contemplated but verification thereof has been left for the future."

The solicitor views the present appeal as similar to *In re Buting,* 418 F.2d 540, 57 CCPA 777 (1969). Buting claimed a method of treating seven forms of malignant conditions in humans using a variety of compounds. Buting submitted Markush claims, the equivalent of individual claims covering each malignant condition specifically recited with each separate compound. Based upon the *facts* of *Buting,* including the types of cancer and number of compounds specifically claimed, we held that the submitted evidence, limited to one compound and two types of cancer was inadequate. By analogy, the solicitor argues that, since appellant's evidence is not directed towards all forms of arthritis and there is no evidence of tests in humans, the evidence is not commensurate with the broad scope of utility asserted and claimed and, therefore, the appealed claims were properly rejected under § 101 for insufficient evidence of utility.

We do not view the *Buting* case to be dispositive of the present appeal. In *Buting,* the specification was directed to only the treatment of cancer in humans. The claims read on the "administration [of an effective amount of the recited compound] to a patient" suffering from one of seven types of malignant conditions. Although "a patient" can refer to both humans and animals, when read in light of the *Buting* disclosure, it is clear that only human utility was contemplated.

Furthermore, the claims of *Buting* contained a Markush group of seven specific malignant conditions to be treated. This is equivalent to seven individual claims, each reciting one form of cancer to be treated with the recited generic composition. We stated that the amount of evidence required to overcome a § 101 rejection depends on the facts of each individual case. In that particular case, Buting did not come forth with enough evidence considering the scope of his claims and the nature of the utility asserted in the specification. The evidence in the present case, however, unquestionably establishes the utility of the composition for the treatment of animals.

The present appeal is not unlike our prior case, *In re Gottlieb,* 328 F.2d 1016, 51 CCPA 1114 (1964). *Gottlieb* involved a claimed invention for a new antibiotic called filipin and the process used to produce it. Utility for filipin was disclosed in appellants' specification as follows:

Because of its low phyto toxicity, filipin is useful in the treatment of gray leaf spot in tomato plants caused by Stemphylium solani. The antibiotic is useful also in the treatment of other plant and fruit diseases caused by fungi which includes black mold in onion plants, corn leaf blight, collar rot in tomatoes, bitter rot in apples, tomato wilt, and the like. Further, its use in the treatment of skin and deep-seated infections is likewise indicated. Still

further, because of its marked inhibition of tritrichomonas foetus, in concentrations as low as one microgram per milliliter, its use in the treatment of abortion in cattle is likewise indicated.

Thus this court noted three separate areas of use: (1) as a plant fungicide, (2) for treatment of human "skin and deep-seated infections," and (3) for "treatment of abortion in cattle." The specification only recited the results of tests showing the inhibitory effect of filipin against certain fungi as well as composition tests of the inhibitory effects of filipin and ethanol against certain fungi. During prosecution before the Patent and Trademark Office, appellants referred to an article which showed tests of filipin against root-rotting fungi. The examiner's only comment was that "[t]he tests * * * are obviously not convincing of all utilities alleged in the specification."

The board expanded upon the examiner's comments and took a position quite analogous to its position in the present appeal:

> The appealed claims stand rejected for lack of utility in the absence of clear and convincing proof that the compositions are safe, effective and reliable for the purpose alleged. Appellants' specification states that the use of their antibiotics "in the treatment of skin and deep-seated infections is indicated." The specification states that it can be used in topical or oral preparations. Under the circumstances of this case we consider that the therapeutic utility has not been proven. We agree with the examiner that the evidence submitted is insufficient. For the reasons that the examiner has set forth the affidavit is not convincing to us of all the therapeutic utilities alleged in the specification. The examiner points out that the affidavit is hearsay as it is not by the individuals doing the work. Further, the statistical results do not appear significant. The rejection of appealed claims for lack of utility will be sustained.

On reconsideration, the board said:

> Appellants urge that there is adequate disclosure of nonhuman utility at the bottom of page 13 of the specification. The examiner, in his Answer, stated in regard to the rejection of the claims for lack of utility that appellants have failed to prove that filipin per se is an effective therapeutic in animals. We affirmed this rejection. No showing was made as to proof of nonhuman therapeutic utility. Furthermore, the specification merely "indicates" that filipin may be useful for the purpose now relied on by appellants.

In *Gottlieb,* we concluded that a disclosed utility, uncontested and established by evidence, in treating a variety of plant fungi was sufficient to satisfy the utility requirement of 35 U.S.C. § 101. In doing so, we held that "even if the proof of utility in human beings or animals is not adequate, there remains the alleged utility as a plant fungicide." Similarly, with regard to the present appeal, even if proof of utility of the claimed invention as an anti-arthritic agent for human beings is lacking, there remains the proven utility as an anti-arthritic agent for lower animals. Having found that the claimed composition has utility as contemplated in the specification, § 101 is satisfied and it becomes unnecessary to decide whether it is in fact useful for the other purposes indicated in the specification as possibilities. See *In re Gottlieb,* 328 F.2d at 1019, 51 CCPA at 1117.

The concurring opinion views the majority position as being contrary to *In re Harwood,* 390 F.2d 985, 55 CCPA 922 (1968). *Harwood* involved claims directed toward a method of causing sexual sterility in insects which comprised administering to the insect a 2-nitrofuran. The specification contained certain examples which showed the sterilization of flour beetles and vinegar flies with certain 2- or 5-nitrofurans. The applicant, Harwood, taught that the nitrofurans disclosed act to destroy the symbionts of the insects, which results in sterility.

However, the examiner cited two literature articles, each of which disclosed that some insects which have been rendered symbiont-free may not lose their reproductive capacity. This court held that the invention as defined by the claims did not satisfy the requirements of § 101, principally because of the evidence submitted by the examiner that established that appellant's process would not be operative on a number of insects within the scope of the broad claims.

This case differs from *Harwood* because here the examiner has produced no evidence to show that the claimed invention is not useful in the treatment of arthritis in any animal, including humans. Cf. *In re Langer,* 503 F.2d 1380 (CCPA 1974). We consider the result in the present appeal to be compatible with *Buting, Harwood,* and *Langer,* and, of course, as completely consistent with *Gottlieb.*

Accordingly, the decision of the board is *reversed.*

*REVERSED.*

MARKEY, Chief Judge (concurring).

In *In re Buting,* 418 F.2d 540, 57 CCPA 777 (1969), and *In re Harwood,* 390 F.2d 985, 55 CCPA 922 (1968), we sustained § 101 rejections of claims encompassing both operative and inoperative applications of a compound. In *In re Langer,* 503 F.2d 1380 (CCPA 1974), we sustained a § 101 rejection of claims encompassing both operative and inoperative compounds. In *Buting* we did so, *sotto voce,* because of the suspect nature of cancer cures. In *Harwood* and *Langer* we did so in view of evidence of record establishing the alleged inoperativeness.[1]

The legal principle or theory of the cited cases thus support a § 101 rejection [2] when the utility shown by the evidence is not commensurate with the scope of the claims, i. e. when the claim is of such breadth as to read upon both operative and inoperative applications of compounds or methods. I think that principle is wrong, because such claims will never be applied to or enforced against the inoperative compounds or methods encompassed. No one uses things that don't work. The aged concern over the sale of "patent medicines" may be safely entrusted to the Food and Drug Administration. Further, it is possible to conceive of inoperative subject matter within the "metes and bounds" of all but the most narrow of claims. If use on humans had been proven here, for example, the claims could be viewed as rejectable because they encompass fish, birds and other "recipients" on which the composition may not be operative. Nonetheless, until the court is prepared to overrule the cited authorities, the principle for which they stand must be applied whenever the record brings that principle to bear.

The composition claims involved in *In re Gottlieb,* 328 F.2d 1016, 51 CCPA 1114 (1964), contained no recitation of use of the new composition claimed. In the present case, however, the preamble of the claims to coal ash, an old composition, recites an "anti-arthritic" preparation, which must be construed as a mate-

1. In *In re Ferens,* 417 F.2d 1072, 57 CCPA 733 (1969), we sustained a § 101 rejection of claims to a cure for baldness in the face of substantial evidence which we found not to be "clear and convincing" in the light of contemporary knowledge. No utility of any kind was found.

2. We deal herein only with a § 101 rejection. There is no § 112, first paragraph, rejection before us. We are limited to the record as presently made in the Patent and Trademark Office. In *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 336 U.S. 271, 276–77, 69 S.Ct. 535, 538, 93 L.Ed. 672, 677 (1949), the Supreme Court affirmed a finding of invalidity of claims drawn to both operative and inoperative "metallic silicates" in view of the evidence of inoperativeness adduced at trial, referring to the predecessor of § 112. See P. Janicke, "Patent Disclosure—Some Problems and Current Developments," 52 *J.Pat.Off.Soc'y* 757, 774 (1970).

rial use recitation. Thus, both the composition and method claims before us are drawn to use on recipients, including both human and nonhuman animals.[3]

That which distinguishes the present case from *Buting, Harwood* and *Langer* is the absence of evidence of inoperativeness. If there be no evidence of inoperativeness, or human experience which, as in *Buting*, takes the place of such evidence, the question of inoperativeness does not arise. Thus the distinction lies in placement of the burden of proof, a matter of procedure, not legal principle.

For all that is known, the composition may work in humans. The examiner has supplied no evidence that it won't. Cf. *In re Armbruster*, 512 F.2d 676, 677 (CCPA 1975); *In re Langer*, supra; *In re Marzocchi*, 439 F.2d 220, 223, 58 CCPA 1069, 1073 (1971). Absent some evidence, it cannot be assumed that the treatment of arthritis in humans is comparable to the treatment of cancer in *Buting* and of baldness in *Ferens*, supra note 1. Hence, I would reverse the decision below solely upon the absence of evidence.

**3.** In *Buting*, treatment of particular cancers was specifically claimed. In the present case, appellant does not specifically claim use on humans, but the appealed claims encompass use on humans and the legal theory is the same.