58 CCPA

**Application of Gordon Henry COOK and Peter Arnold Merigold.**

**Patent Appeal No. 8446.**

United States Court of Customs and Patent Appeals.

April 8, 1971.

Rehearing Denied July 1, 1971.

Holcombe, Wetherill & Brisebois, Washington, D. C., attorneys of record, for appellant. Joseph F. Brisebois, John A. Feketis, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–27 in appellants' application serial No. 309,208, filed September 16, 1963, for "Optical Objectives of Variable Equivalent Focal Length Having Two Divergent

Members For Zooming Purposes." We affirm.

## THE INVENTION

The rejected claims are for an allegedly improved version of a particular kind of "optical objective of the 'zoom' type." In common parlance, an optical objective is called a lens. A "zoom" lens assembly is one in which the focal length, and consequently the image size as seen from a fixed position, can be varied continuously by movement of certain lens elements to vary the scale of the image without loss of focus. The zoom lenses involved here have four optical members, the outer one of which is axially movable for focusing purposes but stationary during zooming, the middle two of which are axially movable to produce the zooming effect, and the innermost one of which is stationary. Such lens assemblies are extremely complex from the optical design standpoint; the six examples set forth in appellants' specification are each characterized by over one hundred related parameters. The rejected claims recite certain relationships among a relatively small number of these parameters, the stated purpose of which is to extend the range over which the scale of the image provided by the lens assembly, i. e., the equivalent focal length, can be varied without experiencing an unacceptably high degree of image distortion at any point in the range.[1]

Claim 1 is illustrative (subparagraphing and emphasis supplied) :

1. An optical objective of the zoom type (that is of the type having relatively movable members whereby the equivalent focal length of the objective can be continuously varied throughout a range, whilst maintaining constant

position of the image plane), corrected for spherical and chromatic aberrations, coma, astigmatism, field curvature and distortion, and

comprising

a convergent first member which for a given object distance remains stationary during the zooming relative movements,

an axially movable divergent second member behind the first member having equivalent focal length $f_B$ *lying numerically between 4 and 8 times* the minimum value of the ratio of the equivalent focal length of the complete objective to the $f$-number of the objective in the range of variation,

an axially movable divergent third member behind the second member having equivalent focal length $f_C$ *lying numerically between 5 and 10 times* the minimum value of such ratio,

a stationary convergent fourth member behind the third member,

a zoom control element, and

means whereby operation of the zoom control element causes the zooming relative movements to be effected,

wherein

the total axial movement of the second member in the range of variation *lies numerically between $1.5f_B$ and $2.5f_B$* and

the total axial movement of the third member in the range *lies numerically between 0.25f_C and 0.5f_C,*

---

1. According to appellants' brief, "designers have been heretofore unable to design a lens having both adequate correctional properties and a zooming range in excess of about six times its minimum focal length." Appellants' examples, the operativeness of which has not been challenged, are of lens assemblies in which the zooming range is ten to one. There is no evidence in the record to support the assertion that a range of over six to one has not heretofore been possible, but whether or not it is true is unimportant. No prior art being relied on, appellants had no need of recourse to objective indicia of nonobviousness. Whether or not their application teaches how to make a *better* zoom lens is irrelevant to the issue before us.

the minimum axial separation between the second and third members occurring when the equivalent focal length of the objective is greater than half its maximum value in the range of variation,

the movable divergent second member consisting of a divergent simple meniscus component with its surfaces convex to the front and a divergent compound component behind such simple component, and

the movable divergent third member consisting of a doublet component having its front surface concave to the front with radius of curvature *lying numerically between* $0.5f_C$ *and* $1.0f_C$.

## THE REJECTION

There is no rejection on prior art. The examiner rejected all of appellants' claims under both the first and second paragraphs of 35 U.S.C. § 112. The board affirmed both rejections. However, at oral argument the solicitor for the Patent Office, noting that the rejections on the second paragraph of § 112 were "prior to the court's decisions in *Robins* [In re Robins, 57 CCPA 1321, 429 F.2d 452, 166 USPQ 552 (1970)] and predecessor cases [presumably, In re Borkowski, 57 CCPA 946, 422 F.2d 904, 164 USPQ 642 (1970), In re Halleck, 57 CCPA 954, 422 F.2d 911, 164 USPQ 647 (1970), and In re Wakefield, 57 CCPA 959, 422 F.2d 897, 164 USPQ 636 (1970)]," stated that "Today we may consider the Office's position * * * under paragraph one completely." In view of this statement, we reverse the rejection under the second paragraph of 35 U.S.C. § 112 on the basis of the above-cited cases.

Two distinct rationales are apparent in the rejection below under the first paragraph of § 112. First, appellants' disclosure was said to be insufficient because it would require many months for a skilled lens designer, working with the aid of a computer, to design, within the ambit of the claims, a satisfactory zoom lens assembly other than the six specifically disclosed. Second, appellants' disclosure was said not to support their claims because their six examples are not representative of the ranges recited in the claims and, when challenged, appellants did not give a satisfactory explanation of the origin of the range limitations in the claims. We will discuss these two rationales in turn.

## OPINION

### A. *Difficulty of Designing an Operative Embodiment*

It seems to have been agreed by all concerned that the design of commercially satisfactory zoom lenses of the kind involved here (i. e., four-member zoom lenses) is an extremely complex and time-consuming operation, even with the aid of modern computer techniques. Thus, quite apart from appellants' teachings, it would take a lens designer setting out to design a new zoom lens of this type many months, or even years, to come up with a marketable lens assembly possessing all the desired characteristics.

Appellants do not purport to have solved all of the time-consuming problems involved in the design of a new lens; indeed, to the extent that their relationships add new calculations to the design of zoom lenses, they may even have increased the time required. What they do claim to have done is to have discovered a simple set of relationships among some of the fundamental parameters involved in the design of zoom lenses which, if respected, will result in zoom lens assemblies which will be capable of zooming through a wider range than previous zoom lenses without experiencing an unacceptably high degree of image distortion at any point in their ranges of equivalent focal length variation. They are thus, it seems to us, somewhat in the position of a suspension-bridge builder who has discovered that maintaining certain relationships between the height above the roadway of the main piers and the distance between the piers will result in bridges of substantially increased strength. Disclosure

by the bridge builder of this relationship would certainly not solve all the time-consuming problems of bridge designing or building, but it would, we think, enable any person skilled in the art to practice the invention. Similarly, we feel that, while appellants' disclosure has not taught those skilled in the art how to design an entire new zoom lens in short order, it *has* taught those skilled in the art how to design a new zoom lens *of the type here claimed* without undue effort. The rejection therefore cannot be sustained on this rationale.

#### B. *Support for the Range Limitations in the Claims*

The second problem, however, is more difficult. Appellants disclose six specific examples of lens assemblies embodying their invention, but they have claimed their invention in terms of broad ranges within which various parameters shall fall, which include but also go far beyond the specific examples. The examiner challenged the breadth of appellants' ranges, asking, "How could there be any lens design significance for all the values that can be chosen within the various broad ranges?" and demanding "Additional explanation * * * to explain the breadth of the ranges." As far as we can determine from the abbreviated record in this case, appellants never provided such "Additional explanation,"[2] contenting themselves with unsupported assertions, as quoted in the final action, that the range limitations

> * * * "cooperate with one another to form a complete combination, such that sufficiently good results are achieved, for all values within the specified ranges of variation for individual parameters, to produce the desired improvement over known objectives, provided of course that the de-

signer makes appropriate use where necessary of the store of common general knowledge which all experts have."

On that record, the board affirmed the examiner's rejection "for substantially the reasons stated by the Examiner," but made an additional point by noting that

> We consider the reasons which prompt the denial of broad claims to a chemical compound or a chemical process that is based on a single disclosed example are more than applicable here since few chemical processes or compounds involve as many parameters or as a high degree [as high a degree?] of precision as are evidenced in the case of the design of a complex lens and the predictability of securing the wanted results are much less than would be present in most chemical reactions.

Appellants rely on this court's decision in In re Vickers, 141 F.2d 522, 31 CCPA 985 (1944), reversing the rejection of claims in a mechanical case reading on oil well pumping apparatus in which two valves were actuated by a single piston although appellants' specification disclosed actuation of the two valves by different pistons. The examiner had stated that "it * * * [was] not immediately clear" to him how both valves could be actuated by a single piston and that "applicants * * * [had] not shown how to do it." The board affirmed, stating (as paraphrased in the opinion of this court) that "an entirely different and unobvious construction from that shown in appellants' drawings and specification would be necessary in order to control the valves by a single piston." This court stated that it was "unable to concur in the view of the solicitor that appellants' specification does not suggest that * * * [both valves] could be op-

---

2. The closest they seem to have come to explaining the origin of the ranges in their application is the statement, contained in their Request for Reconsideration of the board's decision, that

> Appellant[s?] has [have?] in his [their?] possession a stack of paper

three feet thick covered with calculations which resulted in the definition of the ranges set forth in the specification.

erated by a single piston." The court found that "it is plainly suggested in appellants' specification that the accumulator piston alone may operate the valves for the purposes set forth in the appealed claims" and apparently accepted the explanation offered by counsel for appellants in their brief of the "obvious" manner in which this result could be achieved.

However, the opinion in *Vickers* does not stop there. It continues, noting but not answering "the question raised by counsel for appellants as to whether the tribunals of the Patent Office have authority to reject a broad claim merely because it may cover one or more inoperative species," but concluding that, even if they had such authority, the burden was on the Patent Office "to show that such a claim covers an inoperative species, and not upon the applicant to show that it does not." Clearly, since it had already held the single-piston valve-actuating structure an obvious variation of the disclosed two-piston valve-actuating structure, the court was of the view that the Patent Office had not carried this burden. Accordingly, it held that appellants had supported their broad claims by their disclosure of a single form of the claimed apparatus.

*Vickers* is cited in the Manual of Patent Examining Procedure, § 706.03(Z), for the proposition that "In mechanical cases, broad claims may properly be supported by a single form of an apparatus or structure." This statement is then contrasted with the rule "In chemical cases" that "the disclosure of a single species usually does not provide an adequate basis to support generic claims * * * because in chemistry it is not obvious from the disclosure of one species, what other species will work." This dichotomy, which we would prefer to see denominated a dichotomy between predictable and unpredictable factors in any art rather than between "mechanical cases" and "chemical cases," has been at the heart of much of the argument here, appellants contending that they are entitled to their broad claims by virtue of a single operative example because this is a "mechanical case" while the solicitor contends that appellants are entitled only to claims reading on their disclosed embodiments and obviously operative variations thereof.

■ Preliminarily, it should be said that we regard the "question raised by counsel" and left open by this court in the *Vickers* case, as to the authority of the Patent Office to reject broad claims merely because they read on one or more inoperative species, as having been answered generally in the affirmative by subsequent cases. In 1949 the Supreme Court held that claims may be too broad "to the point of invalidity" by reason of reading on significant numbers of inoperative embodiments. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 276–277, 69 S.Ct. 535, 93 L.Ed. 672 (1949) (claims reading on all "silicates" or all "metallic silicates" when only nine metallic silicates "had been proved operative").[3] We see no reason why the Patent Office as well as the courts deciding infringement litigation should not "have authority to reject a broad claim merely because it * * * [reads on a significant number of] inoperative species."[4]

---

3. See also Goodman, "The Invalidation of Generic Claims by Inclusion of a Small Number of Inoperative Species," 40 JPOS 745 (1958), and Einhorn, "The Enforceability of Patent Claims Encompassing Some Inoperative Species," 45 JPOS 716 (1963). It should be noted that both Goodman and Einhorn focus on claims litigated in infringement actions, where equitable considerations may be present which are not present during the prosecution of patent applications, since an applicant is still in a position to amend his claims to exclude inoperative subject matter. Cf. In re Prater, 415 F.2d 1393, 1404–1405, 56 CCPA 1381, 1396 (1969), and In re Harwood, 390 F.2d 985, 989, 55 CCPA 922, 926–927 (1968).

4. While we have held that "the mere *possibility* of inclusion of inoperative * * * [subject matter] does not prevent *allowance* of broad claims," In re Sarett, 327 F.2d 1005, 1019, 51 CCPA 1180, 1199 (1964), when the examiner

However, many patented claims read on vast numbers of inoperative embodiments in the trivial sense that they can and do omit "factors which must be presumed to be within the level of ordinary skill in the art," In re Skrivan, 427 F.2d 801, 806, 57 CCPA 1201 (1970), and therefore read on embodiments in which such factors *may* be included in such a manner as to make the embodiments inoperative. There is nothing wrong with this so long as it would be obvious to one of ordinary skill in the relevant art how to include those factors in such manner as to make the embodiment operative rather than inoperative. Ibid. See also Goodman, op. cit. note 3 at 748, and Einhorn, op. cit. note 3 at 719.

In this case appellants do not contend that every four-member lens assembly in which the specified parameters and parametric relationships are kept within the recited ranges will be "useful" as a zoom lens in the sense of 35 U.S.C. § 101, nor that the specification teaches "how to use" those lens assemblies within the claims which are not "useful" as zoom lenses.[5] What appellants contend is that *certain* of such four-member lens assemblies will be useful as zoom lenses (indeed, that they will be superior in at least one sense to prior-art zoom lenses) and that it would be obvious to those skilled in lens design whether a given embodiment within the indicated ranges, once conceived, would or would not be useful as a zoom lens. Compare In re Fisher, 427 F.2d 833, 839, 57 CCPA 1099 (1970). The word "obvious" as here used means that those skilled in the art would know how to determine utility without having to build and try out the

conceived embodiment and could do so without the expenditure of unreasonable effort. Cf. *In re Vickers,* supra (operability of single-piston device "obvious" from theoretical considerations unsupported—but unrebutted—by actual construction). Of course, given the complexities of zoom lens design, the determination, while routine, could be very time-consuming.

■ As far as appellants' arguments go, they are persuasive. We agree that appellants' claims are not too broad "to the point of invalidity" just because they read on even a very large number of inoperative embodiments, since it seems to be conceded that a person skilled in the relevant art could determine which conceived but not-yet-fabricated embodiments would be inoperative with expenditure of no more effort than is normally required of a lens designer checking out a proposed set of parameters. In that sense, our reasoning here is similar to that which led us to reject the board's first rationale for its rejection under the first paragraph of § 112.

■ However, appellants' arguments do not reach the heart of the board's second rationale, which, as we understand it, is that appellants, having been challenged to do so by the examiner, failed to demonstrate that the ranges of parameters and parametric relationships recited in the claims reasonably bound the area within which satisfactory zoom lenses could be produced by ordinary design skill. The examiner in effect, and reasonably in our estimation, challenged appellants to prove that there were embodiments to be found, not only near the six

sets forth reasonable grounds in support of his conclusion that an applicant's claims may read on inoperative subject matter (other than subject matter inoperative only in the sense of In re Skrivan, discussed infra), it becomes incumbent upon the applicant either to reasonably limit his claims to the approximate area where operativeness has not been challenged or to rebut the examiner's challenge either by the submission of representative evidence, In re Harwood, supra, 390 F.2d at 989, 55 CCPA

at 926, or by persuasive arguments based on known laws of physics and chemistry, In re Chilowsky, 229 F.2d 457, 462, 43 CCPA 775, 782 (1956), and In re Vickers, supra.

5. See Janicke, Patent Disclosure—Some Problems and Current Developments, Part II, "Undue Breadth as a Disclosure Problem," 52 JPOS 757 (1970), concerning the relationship between lack of § 101 utility and failure of the specification to teach "how to use" as required by § 112.

specifically disclosed examples, but at various points throughout the broader claimed ranges, which would be operative. Appellants asserted that they had made "calculations which resulted in the definition of the ranges set forth in the specification," but they never produced those calculations to substantiate the truthfulness of the teaching in their specification which the examiner challenged. Section 112 requires not that the specifications merely say how to use the claimed invention, but that such teaching be true, i. e., in fact enabling. Appellants having failed to establish the truthfulness of their assertions about the validity of their ranges when reasonably challenged to do so by the examiner, we hold that the Patent Office properly rejected the appealed claims. The decision of the board is affirmed.

Affirmed.