**Application of John STARK, Jr.**
**Patent Appeal No. 8635.**

United States Court of Customs
and Patent Appeals.
Jan. 27, 1972.

**1402**

Eugene M. Whitacre, attorney of record, for appellant. Paul J. Rasmussen, of counsel.

S. Wm. Cochran, Washington, D.C., for the Commissioner of Patents. R. V. Lupo, Washington, D.C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Associate Judges, and RE, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 14–18 of appellant's application serial No. 570,382, filed August 4, 1966,[1] for a "television Degaussing System With Saddle-Type Coils Adjacent CRT Cone." Twelve claims stand allowed. We reverse.

The appealed claims were copied from Patent No. 3,340,443 to Rieth and O'Leary (Rieth), issued September 5, 1967, on an application filed April 30, 1964. The rejection was based solely on the ground that the claims are not supported by appellant's application.

### The Invention

The invention relates to apparatus for degaussing (demagnetizing) a color television receiver which employs a shadow mask type of picture tube. In such a tube, the shadow mask with hundreds of thousands of small apertures in it is positioned just behind the tube's viewing screen. The apertures are aligned with trios of red, green, and blue phosphor dots deposited on the screen. An electron gun structure in the tube directs three separate electron beams toward the screen. Each beam passes through only one aperture in the screen at a time, and the trajectories of the beams are adjusted so that each beam impinges on phosphor dots of only one color. The mask "shadows" dots of the other two colors from the beam for each color.

The mask is made of a metallic material which is magnetizable. External magnetic fields, including stray fields and the earth's field, may cause undesired magnetization of parts of the tube including the mask. Such magnetization tends to deflect the electron beams from their preadjusted trajectories and causes misregistration with the respective phosphor dots. In particular, moving the receiver from one position to another tends to result in misregistration caused by the earth's magnetic field.

It is well known that metal which has become magnetized can be degaussed by subjecting it to an alternating magnetic field which has an initial strength greater than the strength of the field within the metal and then gradually reducing the strength of the applied field until there is substantially no magnetic flux left in the metal. An early method of degaussing a color television receiver utilized that principle by moving a wire coil energized with alternating current about the face of the picture tube and gradually moving the coil away from the tube.

The present invention utilizes a pair of coils permanently disposed about the receiver tube for automatic degaussing. The coils are connected to an electrical circuit that is operated each time the receiver is turned on to briefly energize them with a decaying alternating current and thus provide an alternating magnetic field that quickly decreases from a maximum value to zero. A shadow mask type color picture tube with de-

---

[1]. Designated a continuation of abandoned application serial No. 331,669, filed December 19, 1963.

gaussing coils is shown in top plan view in Fig. 1 of the application drawing and a front view of the coils (with tube omitted) is shown in Fig. 2.

Fig. 1.

Fig. 2.

[A4867]

The two coils are designated generally 14 and 15. They are saddle-shaped with front portions 19, 19′ extending about the face of the tube 10, longitudinal portions 16, 16′ and 17, 17′ extending rearwardly from the front portions, and rear portions 20 and 20′ interconnecting the respective side portions. Connections (not shown) between the coils are such that, at a given instant during their energization, the relationships of the directions of current flow in the various coil portions are as shown by the solid arrows in the above figures.

Claims 14 and 18 are representative (emphasis ours):

14. In a color television receiver, a color picture tube having a display face with a plurality of different phosphors distributed across the display face, said phosphors in the plu-

**1404**

rality being effective to luminesce with visible light of particular colors when bombarded by electrons:

electron means for scanning the display face with electrons to excite the phosphor [sic] into luminescing with the particular colors;

a mask disposed in said tube between the face and said electron means, said mask being positioned to shield the different phosphors in the plurality from electrons representing different colors;

at least a pair of coils positioned adjacent the mask at spaced positions and *extending in a direction transverse to the mask* to produce a magnetic flux field in the mask *without any dead spot at any position on the face of the color picture tube,* and

means coupled to the pair of coils for energizing the coils with a signal of decaying intensity to gradually reduce the intensity of the magnetic flux field in said mask and degauss the color picture tube.

18. In a color television receiver,

a color picture tube having a display face;

clusters of phosphors distributed over the display face of said tube, each cluster including a plurality of separate primary phosphors each being provided for a different primary color;

a plurality of electron guns each being provided for a different primary color to scan said display face with an electron beam and direct a beam of electrons onto the phosphors having the particular primary color corresponding to the particular gun;

a mask disposed between the face and said electron gun, said mask having a plurality of apertures each being provided for an individual one of the clusters, the mask being made from a material having magnetic properties;

at least a pair of coils disposed outside of the tube and *substantially normal to the mask* and in magnetically

coupled relationship to the mask, said coils being disposed on the opposite sides of the mask *to produce in the mask flux fields that extend across the mask,* and

means interconnected with the coils to circulate an alternating current of decaying characteristics through the coils and produce a magneic [sic] flux field through the mask of decaying alternating characteristics *to degauss the display face of the color picture tube.*

For present purposes, claims 15 and 16 are substantially the same as claim 14. Claim 17 differs from claim 14 in that it lacks the recitation that the magnetic flux field is "without any dead spot" on the display face of the tube.

### The Rejection

No references are relied on.

The appealed claims were rejected by the examiner "under 35 U.S.C. § 112 as based on an inadequate disclosure." What he obviously meant was that claims 14–18 are not supported by *appellant's* disclosure. (The claims were *based,* of course, on Rieth's disclosure.)

The board sustained this rejection in a short opinion the essence of which is in the following quotation:

The mask recited in the claims, but not described in the specification or shown on the drawing, would normally be approximately in the plane of the conductors 19–19' of the present drawing.

In the light of the foregoing comments, it is not apparent to us how coils composed of members 16–16', 19, 20 or 17, 17', 19', 20' can extend in a direction transverse to the mask or how coils can be asserted to produce a magnetic flux field without any dead spot in any direction of the face of the color picture tube in the absence of a showing by appellant that the vector sum of all the magnetic fields produced by the various convolutions of each part of the coil produces this result.

Accordingly, we will sustain the rejection of claims 14 through 17.

Likewise, we do not find in the present disclosure a pair of coils substantially normal to the mask, or anything in said disclosure that warrants the conclusion that the flux produced by the coils extends across the mask.

Accordingly, we will sustain the rejection of claims [sic] 18.

### The Solicitor's Position

The solicitor bases his arguments on a different understanding of the meaning of the "transverse" and "substantially normal" recitations than that on which the examiner and board plainly relied. First, he maintains that "transverse" as used in the claims is *ambiguous* and must therefore be interpreted in the light of the Rieth patent in which the claims originated.

The Rieth patent shows three different arrangements of a pair of degaussing coils. In one arrangement, two large circular coils in substantially the same plane partially overlap with the face of the tube in the area of overlap and are described as positioned "somewhat coplanar with the shadow mask." Two other arrangements are shown in perspective in Figs. 10 and 11 reproduced below:

PA 8635
[A4901]

With regard to Fig. 10, Rieth describes the two coils 196 and 198 as "substantially coaxial with each other with the axis extending across the tube in the region of the shadow mask 194." As to Fig. 11, the patent states that the coils 300 and 302 "are respectively disposed at the opposite ends of the face of a color display tube 304 and in substantially parallel and flush relationship to the face of the tube." The abstract of the disclosure in the Rieth specification, in the only use of the term "transverse" outside of the claims themselves, refers to the invention as including "a pair of coils positioned adjacent the mask of the tube at spaced positions and extending in a direction transverse to the mask * * *."

The solicitor relates that use of "transverse" in the abstract to the above-quoted descriptions of the three two-coil embodiments to find the word applicable to coils "somewhat co-planar with," lying on an axis "extending

across the tube in the region of," or "parallel and flush" to the shadow mask. He concludes that Rieth employs the common dictionary meaning of "transverse" as "extending or lying across" and means specifically that "the plane of the coils *extends across* the shadow mask of the tube * * *.""[2]

## OPINION

### I. *Sufficiency of Appellant's Description of the Claimed Structure*

 Accepting, arguendo, the interpretation of the "transverse" and "substantially normal" recitations on which the examiner and board relied, and with which appellant acquiesced throughout, we do not agree that those recitations find no support in appellant's disclosure. The rejection was grounded on the position that coils 14 and 15 are not "transverse" to the mask because *parts* of them, such as portions 19 and 19′ at the tube screen, either coincide with or are parallel to the plane of the mask. That position is not correct because the *entire* coil must be considered in determining the direction in which it is disposed. In the absence of more specific recitations, it is apparent that the direction of a flat coil is determined by the plane it lies in and the direction of a coil that is not flat may be regarded as determined by the plane that comes closest to its configuration. Appellant's coils 14 and 15, in our opinion, are appropriately described as disposed "transverse" or "substantially normal" to the plane of the tube screen or adjacent shadow mark. See appellant's Figs. 1 and 2, supra.

 But even regarding the claims as ambiguous as the solicitor urges, we do not find the Rieth disclosure to demonstrate that the interpretation of "transverse" urged by him is correct. In the embodiment of Rieth Fig. 10, the coils 196 and 198 are in planes substantially perpendicular to the plane of the mask. The coils then are "transverse" to the mask in the sense of the claims as interpreted by all concerned during prosecution in the Patent Office. From all we can ascertain from the record here, which does not include the prosecution history of Rieth, that interpretation is correct, and we must accept it here in preference to the unproven alternative meaning urged here for the first time by the solicitor.[3]

### II. *Sufficiency of Appellant's Description of How to Use the Invention ("Operability")*

 We also hold that appellant's disclosure supports the requirement that the coils "produce a magnetic flux field in the mask without any dead spot at any position on the face of the color picture tube." The statement of the board, quoted above, questioning the absence of a dead spot "in any direction" gives no reason why dead spots would be expected with appellant's structure.[4] On the other hand, the application is expressly directed to degaussing "the picture tube screen structure"; it points out that it was difficult to produce a degaussing field of sufficient strength throughout the entire space which it was desired to demagnetize in larger size tubes with prior techniques; and it is directed to an improved structure for such degauss-

2. As to the Fig. 10 embodiment, it is plain from inspection as well as from the above quoted description that it is the *axes* and not the *planes* of coils 196 and 198 that extend across the mask.

3. The solicitor's interpretation seems to be predicated on the view that the claims must find support in all the two-coil embodiments disclosed by Rieth, an assumption plainly lacking support in the present record.

4. See In re Vickers, 141 F.2d 522, 526, 31 CCPA 985, 991 (1944), and In re Cook, 439 F.2d 730, 734 n. 4, 58 CCPA 1049 (1971), holding that the initial burden is upon the Patent Office to set forth reasonable grounds in support of its position that an applicant's claim may read on inoperative subject matter and not upon the applicant to show that it does not. (Note that the USPQ report of In re Cook has two n. 4; it is the first to which we refer.)

ing. To that end, it provides a structure that produces "in the screen region of the tube 10 a magnetic field extending from one side of the tube to the other * * *."5

## III. *Caveat*

The determinations in this ex parte appeal necessarily being limited to consideration of the record before us, our decision obviously does not preclude inter partes consideration or reconsideration of issues arising in the future. See Switzer v. Sockman, 333 F.2d 935, 940–943, 52 CCPA 759, 765–769 (1964).

The decision is reversed.

Reversed.

---

5. Rieth uses much the same language in describing the operation of his Fig. 10 embodiment, stating (emphasis ours) :

 * * * a substantial portion of the flux from the two coils 196 and 198 will extend *across the shadow mask 194 from one side to the other.* As a result, the current source 200 will be effective to produce *a magnetic flux field in all regions of the shadow mask* 194 whereby the *entire* shadow mask will be completely degaussed with a minimum amount of power.