**Application of David BOWEN, Jr.**
**Patent Appeal No. 9135.**

United States Court of Customs
and Patent Appeals.
Feb. 28, 1974.

Stanley M. Tarter, Pensacola, Fla., attorney of record, for appellant, Kelly O. Corley, Pensacola, Fla., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Jack E. Armore, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection under 35 U.S.C. § 112 of claims 1 and 3–11 of application serial No. 766,192, filed October 9, 1968, entitled "Polymerization Pre-Filter." The board stated under Rule 196(c) that, in the absence of a new ground of rejection, claim 2 would be allowed if rewritten in independent form with changes indicated by the board, and appellant has apparently filed an amendment complying with the board's statement, thus placing claim 2 in condition for allowance. We reverse as to claims 1 and 3–11.

*The Invention*

The invention relates to the removal of agglomerates of delusterants and other finely-divided solid powders, referred to as "pigment," from polymers by filtration at the optimum time. The pigment agglomerates, which tend to foul the spinning filter used to spin filaments from the polymer, are removed by filtering the polymerization mass before its viscosity has exceeded 400 poises, and preferably at considerably lower viscosities. As appellant explains, "Remov-

al at this time can be achieved with simple equipment at relatively low pumping pressures and with a minimum power consumption, resulting in substantially increased service life for the subsequent final spinning filters." The specification discloses the use of the invention in particular processes and apparatus where the polymer is nylon 66, but notes that "in its broader aspects it is applicable to other specific processes and to other polymers."

Claim 1 is treated by both appellant and the solicitor as representative of all the appealed claims. It reads:

1. A polymerization process comprising:

(a) introducing melt-polymerizable material having a viscosity less than 400 poises and finely divided pigment into a polymerization vessel, said pigment tending to form agglomerates under melt polymerizing conditions;

(b) maintaining melt polymerizing conditions in said vessel; and

(c) while polymerization is proceeding and before the viscosity of said material exceeds 400 poises:

(1) pre-filtering at least a portion of said material through a pre-filter having a given rating for removal of agglomerates larger than said rating; and

(2) continuing melt polymerization of said filtered portion.

The claims may be read as though the term "melt" has been cancelled in every occurrence, since appellant has apparently filed an amendment deleting "melt" wherever it appears in the claims in response to the board's criticism of the term as new matter with an indication that appellant should cancel the term.

## The Rejection

The sole rejection affirmed by the board was "on the grounds that the term 'polymerizable material' is not disclosed in such full, clear concise and exact terms as to enable any person skilled in the art to which it pertains to make and use the same (35 U.S.C. § 112, paragraph one)." The Examiner's Answer stated only the following as the reason for the failure of the specification to comply with the stated statutory requirement:

The recited "polymerizable material" is not disclosed in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains to make and use same.

Applicant had disclosed one specie [sic] of polyamide, i. e., polyhexamethylene adipamide, which alone is insufficient to support such a broad genus. See In re Shokal et al, 1957 C.D. 234; General Electric Co. v. Wabash Co., 37 USPQ 468.

The board, amplifying the examiner's reasoning, stated the following as the basis for the rejection:

The specific disclosure is drawn to polymerization in an aqueous suspension of certain nylon intermediates only. There is no suggestion that all other polymers can be employed. The nylon components are not representative of all "polymerizable materials," whatever that is intended to include. Not only are all of the very many organic polymers included but also inorganic polymers, which are not even suggested in the specification.

And, on reconsideration, the board, apparently agreeing with appellant's observation "that there is nothing of record to indicate that one skilled in the art could not use appellant's process in polymerizing any polymer," stated that:

However, neither is there any evidence that polymerizable materials other than nylon intermediates will be operable in the claimed process. In our opinion, the situation here is readily distinguishable from the facts of the Burke, [25 CCPA 795, 93 F.2d 50, 36 USPQ 64 (1937),] Roberts, [113 USPQ 205 (Pat.Off.Bd.App., 1956),] Donahey, [126 USPQ 61 (Pat.Off.Bd. App., 1959),] and Marzocchi [, 58 CCPA 1069, 439 F.2d 220, 169 USPQ

367 (1971)] cases cited by the appellant. The properties of "polymerizable materials" can vary over a wide range, rendering it quite uncertain as to whether or not the claimed process is broadly applicable to all such materials. In the absence of such a teaching, we must agree with the examiner's rejection in this instance.

The solicitor, zeroing in on specific portions of § 112, first paragraph, quoting from this court's opinion in In re Marzocchi, 439 F.2d 220, 223, 58 CCPA 1069, 1073 (1971), states that the specification disclosure does not contain "a teaching of the manner and process of making and using the invention in terms which correspond in scope to those used in describing and defining the subject matter sought to be patented" and hence is not in compliance "with the enabling requirement of the first paragraph of § 112." In addition, the solicitor seeks to state an additional basis under paragraph one in saying that, "consonant with the general position implicit below, there is a 'failure of the specification to meet the description requirement of the first paragraph of 35 U.S.C. 112 as to the broad claims on appeal'; In re DiLeone, 58 CCPA 934, 935, 436 F.2d 1033, 1034, 168 USPQ 598 (1971)."

## OPINION

### § 112. Paragraph One—Enablement

It is apparent from the language of the board that the rejection is based on the enablement portion of the first paragraph of § 112 which, as we have held, "requires that the scope of the claims must bear a reasonable correlation to the scope of enablement provided by the specification to persons of ordinary skill in the art." In re Fisher, 427 F.2d 833, 839, 57 CCPA 1099, 1108 (1970). Whether, in a particular case, the requisite "reasonable correlation" between the scope of claims and the scope of enablement provided by the specification exists is often a difficult question. Compounded here with the resolution of that question, which requires a factual inquiry into the knowledge of persons of ordinary skill in the particular art, is the question whether, under the circumstances of this case, the applicant ought to bear the burden of coming forward with evidence to prove enablement—or whether the examiner should have the burden of coming forward with evidence to disprove it—when "there is nothing of record to indicate that one skilled in the art could not use appellant's process in polymerizing any polymer," and "neither is there any evidence that polymerizable materials other than nylon intermediates will be operable in the claimed process."

The board resolved the latter question against appellant, giving as its reasons the general assertion that the "properties of 'polymerizable materials' can vary over a wide range, rendering it quite uncertain as to whether or not the claimed process is broadly applicable to all such materials." The board appears to have based its assertion on its own knowledge of polymer chemistry. Throughout the prosecution, appellant has advanced the theory that his "invention is a purely mechanical filtering process, and is not dependent on the chemical composition of the polymerizable material * * * temperature, pressure, or on any process conditions other than the viscosity of the reaction mass." Appellant further argued:

It appears that the Examiner is extending the chemical exception to the general rule on disclosure well beyond proper limits. The general rule on adequacy of disclosure is that disclosure of a single species is adequate support for a generic claim. An exception to the general rule has arisen in chemical cases because of the uncertainty of various chemical reactions. However, this exception is properly limited only to cases involving chemical compositions or reactions.

To the extent that there may be a difference in the resolution of the question whether enablement is accomplished when the Patent Office has not shown the *ina-*

*bility* of one skilled in the art to use the invention as broadly as it is claimed and appellant has not shown that materials other than those he discloses will operate in the claimed process, we do not think it hinges on whether the case is denominated "chemical" or "mechanical." Compare In re Cook, 439 F.2d 730, 58 CCPA 1049 (1971), with In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971), the latter being a so-called "chemical case" where enablement was found to exist, and the former being a so-called "mechanical" case where the court held enablement not accomplished. As we said in *Cook*, 439 F.2d at 734, 58 CCPA at 1054, we would prefer to see the dichotomy which lawyers find in the chemical and mechanical cases "denominated a dichotomy between predictable and unpredictable factors in any art." However, we recognize that the realities of chemical cases often result in unpredictability. As we explained in In re Fisher, 427 F.2d at 839, 57 CCPA at 1108:

> In cases involving predictable factors, such as mechanical or electrical elements, a single embodiment provides broad enablement in the sense that, once imagined, other embodiments can be made without difficulty and their performance characteristics predicted by resort to known scientific laws. In cases involving unpredictable factors, such as most chemical reactions and physiological activity, the scope of enablement obviously varies inversely with the degree of unpredictability of the factors involved.

It is clear from the decision of the board that the unpredictability which it noted was in the admittedly chemical fact that the "properties of 'polymerizable materials' can vary over a wide range," but no reasons were given to appellant by the Patent Office for the alleged failure—or at least uncertainty—of the class of "polymerizable materials" to work in the claimed process to controvert the statement in appellant's application that his invention, in its broader aspects, is applicable to other polymers.

See In re Nguyen Dinh–Nguyen, Cust. & Pat.App., 492 F.2d 856, decided concurrently herewith. It is clear that even in cases involving the unpredictable world of chemistry such reasons are required. As we stated in In re Marzocchi, 439 F. 2d at 223–224, 58 CCPA at 1073:

> As a matter of Patent Office practice, then, a specification disclosure which contains a teaching of the manner and process of making and using the invention in terms which correspond in scope to those used in describing and defining the subject matter sought to be patented *must* be taken as in compliance with the enabling requirement of the first paragraph of § 112 *unless* there is reason to doubt the objective truth of the statements contained therein which must be relied on for enabling support. Assuming that sufficient reason for such doubt does exist, a rejection for failure to teach how to make and/or use will be proper on that basis; such a rejection can be overcome by suitable proofs indicating that the teaching contained in the specification is truly enabling.

In the field of chemistry generally, there may be times when the well-known unpredictability of chemical reactions will alone be enough to create a reasonable doubt as to the accuracy of a particular broad statement put forward as enabling support for a claim. This will especially be the case where the statement is, on its face, contrary to generally accepted scientific principles. Most often, additional factors, such as the teachings in pertinent references, will be available to substantiate any doubts that the asserted scope of objective enablement is in fact commensurate with the scope of protection sought and to support any demands based thereon for proof. In any event, it is incumbent upon the Patent Office, whenever a rejection on this basis is made, to explain *why* it doubts the truth or accuracy of any statement in a supporting disclosure and to back up assertions of its own

with acceptable evidence or reasoning which is inconsistent with the contested statement. Otherwise, there would be no need for the applicant to go to the trouble and expense of supporting his presumptively accurate disclosure.

Here the only reason given appellant why his specification does not enable one skilled in the art to use his invention as broadly as it is claimed is the statement of the board that "polymerizable materials" include "Not only * * * all of the very many organic polymers * * * but also inorganic polymers." But even this statement only identifies a subgenus of "polymerizable materials" without giving a reason for the implication inherent therein that inorganic polymers would not work in appellant's process. Appellant correctly notes:

> The Board of Appeals mentions "inorganic polymers", presumably intending to refer to something like the various polymers of silicon. Appellant knows of no reason why the filtration step could not be applied to such materials, nor has the Board of Appeals suggested any recognized scientific principle which would be violated in such a case.

The solicitor, possibly recognizing this deficiency, gives the first real explanation of why he doubts the truth of appellant's assertion that his invention is practicable with all polymerizable materials. He says:

> For example, it can be readily recognized that some polymerizable materials, or some polymerizable materials under certain polymerizing conditions, will polymerize so quickly to a higher molecular weight polymer with a viscosity above 400 poises (also containing some agglomerated pigment) that there is no opportunity to pre-filter before the viscosity exceeds 400 poises.

And, in a thirty-three line footnote at the end of the above quotation the solicitor lists several such fast "polymerizable materials" with appropriate textbook authorities.

We think, however, as we stated in a similar context in In re Barr, 444 F.2d 588, 596, 58 CCPA 1388, 1401 (1971), that "the filing of the solicitor's brief is far too late a point in prosecution to inform an applicant of what additional working examples are thought to be needed to support his claims" or, stated another way, what materials covered by the claims allegedly would not work in the invention as claimed.

Here, however, we fail to see how even the rapid polymerizable materials identified by the solicitor (1) are covered by appellant's claims which require the pre-filtering "while polymerization is proceeding and before the viscosity of said material exceeds 400 poises," or (2) if they are within the claim, why one skilled in the art would not immediately appreciate that they are not suitable for use in the process. See In re Skrivan, 427 F.2d 801, 57 CCPA 1201 (1970); In re Cook, supra, and In re Anderson, 471 F.2d 1237 (CCPA 1973).

Accordingly, there appears to be no basis for the non-enablement rejection on the theory that claims read on undisclosed polymers. While the claims literally comprehend numerous polymers in addition to the one specifically described in appellant's specification, nylon 66, no persuasive reason has been given by the Patent Office why the specification does not realistically enable one skilled in the art to practice the invention as broadly as it is claimed.

Finally, the solicitor takes the position that there is another basis for lack of enablement here since appellant's disclosure is limited to "polymerizable materials" capable of producing fiber-forming polymers while the claims are not so limited. The solicitor finds this limitation implicit in the specification where appellant explains the function of his filtering process in removing the agglomerates which "foul the spinning filter normally provided just before the spinneret," the last word representing

the device from which the polymer fibers are drawn. The solicitor asserts that the board and the examiner "clearly indicated that appellant's effective disclosure in the specification appears to be limited to certain nylon polyamides (which cannot reasonably be considered to be representative of *all* polymerizable materials)—that are in fact *fiber-forming* polymers," citing portions of the Examiner's Answer and the board's opinion wherein *other rejections, reversed by the board*, were discussed. Perhaps appellant's specific illustrative disclosure of an embodiment of his invention is limited to polymerizable materials "that are in fact *fiber-forming* polymers." However, that is no basis for a lack of enablement rejection. While appellant's pre-filtering invention undoubtedly is for the stated purpose of removing pigment agglomerates from fiber-forming polymers, appellant's statement of utility does not thereby mean that he is unable to claim his filtering process more broadly. The first paragraph of § 112 requires only that the specification enable any person skilled in the art to which the invention pertains to make and use the invention. There has been no contention by the Patent Office that any person skilled in the art, if he wanted to filter a polymer which was not fiber-forming, would have any trouble doing so. The only other possible basis in the first paragraph of § 112 is the description requirement, relied upon by the solicitor, and dealt with next.

### The Description Requirement

The solicitor's reliance on what this court has referred to as the "description requirement" of the first paragraph of §

112 is misplaced. The so-called "description requirement," which exists in the first paragraph independent of the enablement (how to make and how to use) portions, serves essentially two functions. In the simple case, where no prior application is relied upon, the description requirement is that the invention claimed be described in the specification as filed. In re DiLeone, 436 F.2d 1404, 58 CCPA 925 (1971); In re DiLeone, 436 F.2d 1033, 58 CCPA 934 (1971); In re Smythe, 480 F.2d 1376, 1385 (CCPA 1973). As such, a rejection on the description requirement is tantamount to a new matter rejection under 35 U.S.C. § 132. In re Smythe, supra. Both are fully defeated by a specification which describes the invention in the same terms as the claims. Here there has been no assertion by the board or the examiner that there is any lack of correspondence between the appealed claims and the specification (including the original claims) as filed. Indeed the scope of the language of the specification clearly corresponds to the language of the claims, the "polymerizable material" of the claims being referred to variously by the specification as a "polymer" and a *"polymerizable* mass * * * added * * * as an aqueous solution of monomeric *material,* such as hexamethylene-diamine adipate." (Emphasis supplied.) * Thus there is no basis for the solicitor's reliance upon the description requirement as support for the rejection here.

### Summary

The rejection of claims 1 and 3–11 under § 112, paragraph one, is reversed.

Reversed.

---

* In another situation where the "description requirement" is relied upon, namely, where the benefit of a prior application is being claimed under 35 U.S.C. § 120, the description requirement comes into play as mandating a description of the invention, which is claimed in the later-filed case, in the specification of the application relied upon for support under the statute. See In re Lukach, 442 F.2d 967, 58 CCPA 1233 (1971).