**In re John M. CORKILL, et al.**

**Appeal Nos. 84–1683, 84–1684.**

United States Court of Appeals, Federal Circuit.

Aug. 27, 1985.

Thomas H. O'Flaherty, Proctor & Gamble Co., Cincinnati, Ohio, for appellants.

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

With him on brief was Robert B. Aylor, Proctor & Gamble Co., Cincinnati, Ohio.

Harris A. Pitlick, Associate Sol., U.S. Patent and Trademark Office, Arlington, Va., for appellee. With him on brief were Joseph F. Nakamura, Sol., and John W. Dewhirst, Associate Sol., Washington, D.C.

Before SMITH, NEWMAN and BISSELL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

These consolidated appeals are from the decisions of the Patent and Trademark Office (PTO) Board of Appeals (the Board) sustaining the examiner's rejection of claims 2–11, 13–28, 35–42, 49–58, 60–62, 64–74, and 77–79 in patent application Serial No. 450,266 as unpatentable for obviousness under 35 U.S.C. § 103; and the rejection of claims 1, 3–11, 16, 18, 19 and 21–28 in Serial No. 036,615 as unpatentable under 35 U.S.C. §§ 103 and 112. Serial No. 036,615 is a continuation of Serial No. 450,-266, and differs only in the claimed particle size ranges. Both are the invention of John M. Corkill, Bryan L. Madison, and Michael E. Burns (hereinafter collectively Corkill) and are entitled "Detergent Compositions". We affirm in part and reverse in part.

## OPINION

In both the '266 and '615 patent applications, Corkill claims the combination of certain zeolites with known detergents, to produce detergent compositions. Some of Corkill's claims require as an additional component "an auxiliary detergent builder salt".

The Board in a first set of appeals affirmed the rejections of the claims of both applications under section 103 but, except as discussed for the '615 application, reversed the rejections under section 112. Further prosecution ensued, and in a second appeal the Board affirmed the rejections of all claims. The principal references relied on by the Board were U.S. Patent 3,661,789 to Corey *et al.* and U.S. Patent 2,882,243 to Milton, although a large number of additional references were cited during the course of an extended prosecution.

### The § 103 Rejection

We consider first the section 103 rejections as applied to those claims of both applications that are not restricted to the presence of an "auxiliary builder" in the composition. Claim 79 of the '266 application is typical:

79. A detergent composition capable of rapidly reducing the free polyvalent metal ion content of an aqueous solution, comprising:

(a) from about 5% to about 95% by weight of a water-insoluble crystalline aluminosilicate ion exchange material of the formula

$$Na_z[(AlO_2)_z \cdot (SiO_2)_y] \times H_2O$$

wherein z and y are integers of at least 6; the molar ratio of z to y is in the range from 1.0 to about 0.5, and x is an integer from about 15 to 264; said aluminosilicate ion exchange material having a particle size diameter from about 0.1 micron to about 10 microns; a calcium ion exchange capacity on an anhydrous basis of at least about 200 milligrams equivalent of $CaCO_3$ hardness/gram; and a calcium ion exchange rate on an anhydrous basis of at least about 2 grains/gallon/minute gram; and

(b) from about 5% to about 95% by weight of a water-soluble organic surface-active agent selected from the group consisting of anionic, nonionic, ampholytic and zwitterionic surface-active agents and mixtures thereof.

The core of the board's decision is that it would have been obvious to use known hydrated zeolites with known detergents to reduce water hardness, in view of Corey's teaching of the use of hydrated zeolites with known detergents and bleach to reduce water hardness, and Milton's teaching of zeolites having the same composition and properties as the zeolites in Corkill's claims. Other references were also relied on, but we agree with the PTO that a *prima facie* case is made by the teachings and suggestions of these two references.

The Corey patent contains the following text:

[T]he detergents can be used in combination with the water-soluble soaps and water conditioners. The term "water conditioner" ... designates those compounds which sequester, or inactivate water hardness and aid in cleaning ... Illustrative of the inorganic water conditioners useful in the present invention are the zeolites (hydrated silicates of aluminum and either sodium or calcium or both), sodium carbonate, sodium phosphate, sodium acid phosphate, tetrasodium pyrophosphate, sodium tripolyphosphate, trisodium phosphate, sodium metaphosphate, sodium hexametaphosphate, and sodium tetraphosphate. While the sodium salts of the inorganic compounds are preferred, the other alkali metal salts such as the potassium and lithium salts may be used. (column 4, lines 32–57)

Corkill criticizes the Corey disclosure as "filler", and charges that Corey copied this disclosure from the text of some other patent. Corkill also asserts that Corey does not show that zeolites inactivate water hardness at a rate sufficiently rapid to enable zeolites to be used as replacements for phosphates in detergent compositions. Corkill argues that Corey "merely acknowledges the known art that suggested natural zeolites such as clays ... or, possibly, amorphous (non-crystalline) zeolites as detergent builders or extenders", and that Corey contains no suggestion to use synthetic crystalline zeolites. Corkill also argues that Corey's reference to calcium zeolites, necessarily inoperative to absorb calcium, shows the inadequacy of Corey as a reliable reference.

The PTO discounts the "filler" argument, correctly in our view, for Corey's plain teaching of zeolites as sequestering agents in detergent compositions exists, whether or not Corey viewed it as "filler". The Solicitor states that the reference to calcium is an obvious mistake, an issue we need not reach, for the Solicitor correctly observes that Corey states that the sodium salts are preferred, and the sodium salts are the subject of Corkill's claims.

The PTO admits, as it must, that Corey does not state whether his hydrated zeolites are naturally occurring or synthetic, but the PTO takes issue with Corkill's argument that Corey necessarily excluded the synthetic zeolites, observing that synthetic zeolites were well known—*viz.* those disclosed in Milton ten years prior to Corey's filing date. Corkill, bearing the burden of coming forward, did not have persuasive support for his argument that Corey must be limited to the naturally occurring zeolites. We must agree with the PTO that Corey's plain teaching is not limited to natural zeolites.

The PTO completed the foundation of its *prima facie* case with the Milton reference, which shows hydrated and dehydrated zeolite A. The PTO points out that the claimed limitations to Corkill's zeolites relating to hydration, particle size, and sequestering action, are all properties of Milton's zeolites.

Corkill argues that Milton did not recognize that sufficiently rapid sequestration could be obtained. The Milton data show hydrated sodium zeolite A (a zeolite preferred by Corkill) exchanging calcium ions over a period of several days, but Milton also states:

The rate of exchange of sodium zeolite A can under some conditions be quite rapid. For instance, when sodium zeolite A was put into a solution 0.1 molar in calcium ions, 47% of the sodium ions were replaced in a two minute contact time at 25°C and in 7½ minutes the exchange was 59% complete. Under these conditions of solution concentration about 60% was the maximum exchange available. (column 8, lines 8–15)

The Solicitor also points to the table at the bottom of column 2 of Milton, as showing replacement of 93% of sodium by calcium in hydrated sodium zeolite A. Although Corkill criticizes these data as derived from solutions more concentrated than are found in laundry use, this does not mean that the teaching can be ignored. Further, Corkill's "recitation, in a claim to a composition, of a

particular property said to be possessed by the recited composition, be that property newly-discovered or not, does not necessarily change the scope of the subject matter otherwise defined by that claim". *In re Wilder*, 429 F.2d 447, 450, 57 CCPA 1314, 1317, 166 USPQ 545, 548 (1970).

With respect to the hydration of the zeolites, the Solicitor observed that Corey teaches the use of hydrated zeolites as sequestering agents in detergent compositions, that Milton shows hydrated zeolite A, and that appellant had not shown any criticality in the degree of hydration. Claim 79 spans a range of 15 to 264 molecules of water of hydration when z and y are at least 6, a range commensurate with Milton's disclosure. In response, appellant submitted evidence, by the Madison declaration, that a hydrated zeolite that has been dried and rehydrated is less effective as a detergent builder than one which has not gone through this process. Granting that this has been shown—the PTO has challenged the significance of the data—this is not Corkill's claimed invention. Corey teaches that hydrated zeolites are sequestering agents, and Madison does not negate this point.

Corkill argues that the prior art does not teach the importance of particle size in detergent applications, to which the PTO responds that Milton's zeolites are disclosed in precisely appellant's particle size range:

> Most of the crystals have a size in the range 0.1 micron to 10 microns, but smaller and larger crystals can occur covering the size range of 0.01 micron to 100 microns. (column 4, lines 63–66)

and that Corkill has merely used Milton's zeolites in Corey's compositions for the purpose taught by Corey. The Board discounted Corkill's attempted showing that Milton's zeolites are not produced in the size ranges described in Milton; the Cilley declaration states that the particle sizes of Milton's zeolites are "greatly in excess" of Corkill's upper limit, which is the same upper limit described by Milton. If the purpose of Cilley was to show that Milton's

data on the particle sizes of zeolite A are in error, then the PTO correctly found this showing not persuasive. Nor does Cilley's declaration square with appellant's assertion that zeolite A is a preferred species.

Corkill submitted evidence and argument on the criticality of the claimed size range in detergent applications. Wiers and Cilley submitted declarations to show that small particles are needed, but that larger stable agglomerates of up to 100 microns, consisting of small particles of up to 10 microns or so, are effective and can be used in those applications where particle deposit is not a factor.

Corkill points out that a minimum particle size of one micron is preferred to facilitate secondary sewage treatment techniques, referring to the declaration by Schon, and asks us on this basis to consider separately claims 11, 13–28, 37–39, 42, 60, 74, 77, and 78 of the '266 application, and claims 11 and 16–28 of the '615 application. The Solicitor argues that the Schon affidavit merely shows that particles of less than one micron settle more slowly than larger particles. This particle size preference for sewage treatment purposes is not asserted to have been discovered by Corkill; it does not overcome Milton's teaching of these particle size ranges.

The PTO referred to Milton to show that the properties Corkill asserts to be critical are the properties of known zeolites: the degree of hydration, the particle size, and the rate of calcium absorption. To summarize the PTO's *prima facie* case, which we hold was adequately supported: Corey teaches detergent compositions that may contain hydrated zeolites, or carbonate, or phosphates, to "aid in cleaning". Milton teaches zeolite A in hydrated and dehydrated form, shows the same particle sizes claimed by Corkill, and states that the rate of calcium absorption can be rapid. The PTO concluded that it would have been *prima facie* obvious to use Milton's hydrated zeolites for the hydrated zeolites taught by Corey.

The burden is on appellant to come forward with probative evidence of

the unobviousness of the invention as a whole. In attempting to meet this burden, appellant submitted the declaration of Rees to the effect that "it was generally believed" that zeolites worked too slowly and had too low a capacity to be effective in practical use. Opinions of the contemporaneous beliefs of those skilled in the field as to the nonobviousness of an invention merit fair weight. *In re Piasecki,* 745 F.2d 1468, 1473–75, 223 USPQ 785, 789–90 (Fed.Cir. 1984).

Appellant argues that the inventors selected the zeolites of the claims from among "thousands" of compounds, in the search for sequestering agents that could effectively replace phosphates in detergent compositions. Corkill advises that "[t]here are many zeolites other than zeolite A. Note the teaching of record that there are over 35 different types of zeolite framework structures and an infinite number of zeolites are possible." The record does not show, however, whether all or any of these zeolites would work in Corey's detergent compositions. Although Uytterhoeven declared that it cannot be predicted how any candidate will work in a detergent composition, but that it must be tested, this does not overcome Corey's teaching that hydrated zeolites will work.

We have admonished against weighing each piece of rebuttal evidence piecemeal against the solid mass of a *prima facie* case. *Id.* at 1472–73, 223 USPQ at 788. We have thus considered the totality of appellant's evidence. We are mindful of the "hindsight syndrome wherein that which only the inventor taught is used against its teacher". *W.L. Gore & Assoc. v. Garlock, Inc.,* 721 F.2d 1540, 1553, 220 USPQ 303, 312 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

■ Appellant's submissions did not persuade the Board that Corkill's claims met the requirements of section 103. Upon review of all the evidence and argument on

both sides of the issue, we affirm the correctness of this determination. The rejection under section 103 of the '266 claims that relate to zeolite-containing detergent compositions that are not restricted to requiring the presence of an auxiliary builder, is affirmed.[1]

## The '615 Application

The only difference between the '615 and the '226 claims is the upper limit of 100 microns rather than 10 microns as the particle size of the zeolite. Although appellant's brief states that particles larger than 10 microns are intended for non-laundry applications, the claims of '615 are not so limited, and no patentable distinction has been argued for the larger particles. Milton teaches the particle size ranges of the '615 as well as the '266 claims. There being no other distinction between these claims, we affirm that the claims of the '615 application that relate to zeolite-containing detergent compositions that are not restricted to requiring the presence of an auxiliary builder would have been obvious under section 103.

## The § 112 Rejection

■ The PTO also rejected the '615 claims for being indefinite under 35 U.S.C. § 112, second paragraph. The Board agreed with the examiner's position that it was not clear whether the particle sizes in the '615 claims referred to single zeolite crystals or to agglomerates comprised of smaller crystals. The Board observed that certain declarants on behalf of Corkill had stated that using particles larger than 10 microns led to unacceptable deposition on clothing and washing machine surfaces, while the Wiers declaration stated that agglomerates up to 100 microns in diameter would perform acceptably for some applications provided that the constituent crystals were sufficiently small.

Wiers also declared that crystals larger than 10 microns would not meet the calci-

---

1. Appellant asks us to consider separately the claims limited to zeolite A. The Board did not do so, nor does the record show how these claims are particularly distinguished from the prior art of record. We do not conduct such an examination *ab initio.*

um exchange rate of the claims, and thus would *ipso facto* be excluded. Corkill argues that simple experimentation would show which particles do not achieve the desired exchange rate and should not be used: that is, only those particles that worked would be covered by the claims. The PTO argues, *inter alia,* that even if particles larger than 10 microns met the rate limitation they would be unsatisfactory for Corkill's purpose because they would form unacceptable deposits.

■ Overall, the evidence submitted by Corkill supports the Solicitor's statement that Corkill's "claims do not correspond in scope to what they regard as their invention." Claims which include a substantial measure of inoperatives, as evidenced by the Gedge, Benson, and Ohren declarations, are fairly rejected under 35 U.S.C. § 112. *In re Cook,* 439 F.2d 730, 735, 58 CCPA 1049, 1055, 169 USPQ 298, 302 (1971); *see Atlas Powder Co. v. E.I. DuPont DeNemours & Co.,* 750 F.2d 1569, 1576–77, 224 USPQ 409, 414 (Fed.Cir.1984). As footnoted in *In re Cook,* "during the prosecution of patent applications ... an applicant is still in a position to amend his claims to exclude inoperative subject matter". *In re Cook,* 439 F.2d at 734 n. 3, 58 CCPA at 1055 n. 3, 169 USPQ at 302 n. 3; *see* 439 F.2d at 734 n. 4, 58 CCPA at 1055 n. 4, 169 USPQ at 302 n. 4. The rejection under section 112 is affirmed.

### Combinations with other "Builders"

The Board considered separately those claims in which the zeolites are combined with other "builders". At issue in Serial No. 450,266 are claims 5, 21, 27, 65, 74, and claims dependent thereon; and in Serial No. 036,615 are claims 5, 21, 27 and claims dependent thereon.

The Wiers II declaration shows greater than additive cleaning performance resulting from the combination of zeolites with a variety of auxiliary builders, in the face of diminished (less than additive) depletion of calcium ions for the combinations. The Board agreed that results for some of the combinations tested for cleaning perform-

ance are "better than would be expected." Appellant points to evidence of better than additive cleaning performance of mixtures of zeolites with each of tripolyphosphate, pyrophosphate, citrate, nitrilotriacetate, carboxymethyl tartronate, and sodium silicate. A greater than expected result is an evidentiary factor pertinent to the legal conclusion of the obviousness *vel non* of the claims at issue. *United States v. Adams,* 383 U.S. 39, 51–52, 86 S.Ct. 708, 714, 15 L.Ed.2d 572 (1966).

The Board reviewed the evidence contained in the Wiers II declaration and concluded that the evidence demonstrated synergism "to some degree" with respect to cleaning performance, but observed that appellant's claims were not limited to those specific co-builders and detergent compositions for which data showing synergism had been submitted. The Board also held that this result, even if unexpected, was not "sufficient to overcome the *prima facie* case of obviousness established by the prior art."

■ We discern no *prima facie* teaching of the prior art with respect to these combinations of components. The PTO has pointed to no reference that suggests combining a known builder with zeolites, or that this combination would produce a greater than additive effect in cleaning performance. The PTO has failed to establish a *prima facie* case of obviousness with respect to those claims that require the presence of an auxiliary builder. *See In re Rinehart,* 531 F.2d 1048, 1051–53, 189 USPQ 143, 147–48 (CCPA 1976) (discussing role of PTO's *prima facie* case) and cases cited therein.

The Board had observed that the combination of zeolite and co-builder was not, in most instances reported in the Wiers II declaration, superior in cleaning performance to the auxiliary builder alone. This is not the test. In view of the evidence of a result greater than additive, evidencing some unobvious result in the combination of components, whether one component is

in itself more active than the other is not controlling.

Corkill's specification teaches that a broad range of surfactants may be used in combination with zeolites plus auxiliary builders. In the absence of prior art suggesting or otherwise making these compositions obvious to one of ordinary skill in the art, there is inadequate support for the PTO's rejection of these claims. The burden on this point has not shifted to Corkill. *In re Warner,* 379 F.2d 1011, 1016, 54 CCPA 1628, 1633, 154 USPQ 173, 177 (CCPA 1967), *cert. denied,* 389 U.S. 1057, 88 S.Ct. 811, 19 L.Ed.2d 857 (1968).

We reverse the rejection under 35 U.S.C. § 103 of those claims directed to combinations of the zeolites with auxiliary builders: in Serial No. 450,266 claims 5, 21, 27, 65, 74, and claims dependent thereon; in Serial No. 036,615 claims 5, 21, 27, and claims dependent thereon.

AFFIRMED IN PART and REVERSED IN PART.